**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Victor D. THOMAS, Appellant.**

Superior Court of Pennsylvania.

Argued April 20, 2005.
Filed June 30, 2005.

Herbert A. Terrell, Pittsburgh, for appellant.

Deanne E. Paul, Asst. Dist. Atty., Hollidaysburg, for the Com., appellee.

Before: ORIE MELVIN, BENDER and BECK, JJ.

BECK, J.:

¶ 1 We decide, *inter alia*, the standards to be applied by the trial court in determining that a defendant has forfeited his right to counsel. Appellant Thomas contends that his convictions for assault and related charges were improper because, *inter alia*, of violations of his right to counsel at trial and his right to be present at trial. Finding that appellant forfeited his right to counsel and that he waived his right to be present at trial, we affirm. However, we remand for re-sentencing, because the trial court failed to merge appellant's convictions for simple assault and recklessly endangering another person and also failed to assess appellant's ability to pay before imposing fines.

¶ 2 Appellant was charged with assault, terroristic threats, recklessly endangering another person, and harassment stemming from a domestic dispute with his girlfriend at their home on March 23, 2001. Appellant was arrested on March 30, 2001. The assault charges were dismissed after a preliminary hearing because the victim refused to testify.[1] Appellant was released from jail on April 18, 2001. He was re-arrested that evening, following another domestic dispute, which ended on a highway when the girlfriend/victim sought help from a state trooper. On April 19, 2001, the Commonwealth re-filed charges stemming from the March 23 assault and also filed new charges, including assault, terroristic threats, retaliation against a witness, and resisting arrest, all related to the April 18 incident. The court granted the Commonwealth's motion to consolidate the charges resulting from the two incidents on October 18, 2001.

¶ 3 Following appellant's arrest, he was charged not only with crimes stemming from the domestic assault but also with drug possession violations. State drug charges were *nolle prossed* on October 5, 2001. Federal prosecution on the drug charges resulted in appellant's conviction in March, 2002. After federal sentencing on September 10, 2002, appellant was immediately returned to state custody for trial on the assault charges.

¶ 4 At various times between his arrest and state trial, appellant had five different court-appointed counsel. Appellant also filed a motion to proceed *pro se*, which the court granted. A jury trial was held on April 15–17, 2003. Appellant was not present at trial, but was represented for most of the trial by court-appointed counsel. The jury found appellant guilty of two counts of simple assault, two counts of terroristic threats, recklessly endangering another person, retaliation against a witness, and resisting arrest.[2] He was sentenced to consecutive terms of imprisonment totaling 108—216 months. After denial of appellant's post-trial motions on November 20, 2003, this appeal followed. Appellant raises numerous allegations of trial court error which we address in turn.

## I. Rule 600: "Speedy Trial Rule"

¶ 5 Appellant first contends that the trial court erred in denying his motion

---

1. For reasons that are not clear from the record, the girlfriend/victim invoked her Fifth Amendment rights in refusing to testify at the hearing for the first domestic assault.

2. Appellant was convicted of and sentenced for the following crimes: simple assault, 18 Pa.C.S.A. § 2701(a)(1); terroristic threats, 18 Pa.C.S.A. § 2706(a)(1); recklessly endangering another person, 18 Pa.C.S.A. § 2705; retaliation against a witness, 18 Pa.C.S.A. § 4953; and resisting arrest, 18 Pa.C.S.A. § 5104.

for dismissal of the charges, because he was not brought to trial within 365 days, as required under Pennsylvania Rule of Criminal Procedure 600. In determining the time by which trial must begin under Rule 600, certain periods are not included in the 365 day time limitation. Of particular relevance to this case, when delays in commencement of trial stem from the unavailability of the defendant, those delays are not included in the 365 day count. Pa.R.Crim.P. 600(C)(3)(a). A defendant is deemed unavailable when, *inter alia,* he was present in another jurisdiction, which delayed his extradition to stand trial. *Commonwealth v. Woods,* 444 Pa.Super. 321, 663 A.2d 803, 807–08 (1995); *Commonwealth v. DeMarco,* 332 Pa.Super. 315, 481 A.2d 632, 635–37 (1984); Comment to Pa.R.Crim.P. 600(C)(3)(a).

¶ 6 As the trial court explained, appellant was unavailable for more than one year, from May 18, 2001 until September 10, 2002, because he was in federal custody. We agree with the trial court that, during this time period, the Commonwealth exhibited due diligence in attempting to gain custody of appellant and to bring him to trial. Pursuant to an understanding with the federal prosecutor, the Commonwealth secured custody of appellant immediately after his sentencing on federal drug charges.[3] The trial court committed no error in denying appellant's motion for dismissal based on Rule 600.

## II.  Constitutional Questions

¶ 7 Appellant's second allegation is that he was denied his rights to a fair trial, to counsel, and to self-representation, under the Sixth Amendment of the U.S. Constitution and Article I, sections eight and nine of the Pennsylvania Constitution. Under this general heading, appellant makes numerous allegations of trial court error, including failure to postpone the trial due to unpreparedness; removal of appellant from the court room after he became disruptive; and allowing counsel to withdraw due to threats from appellant.[4] Some further specifics concerning the history of the case and the trial are necessary before we can address these allegations.

¶ 8 On June 20, 2002 appellant filed a motion to proceed *pro se,* to dismiss his present counsel, and to have stand-by counsel appointed. A hearing was held on September 26, 2002, and at appellant's request, the court granted a continuance. On October 10, 2002, the court granted appellant's request to proceed *pro se* after conducting a full colloquy. In an order filed on November 15, 2002, the court appointed attorney Zang as stand-by counsel. Appellant requested and was again granted a continuance at a pretrial motion hearing on November 18, 2002. On January 27, 2003, the pre-trial motion hearing was held, with appellant proceeding *pro se* and attorney Zang in the role of stand-by counsel.

---

3.  Appellant suggests that the district attorney should have cast aside his agreement with the federal prosecutor in order to bring appellant to trial more quickly on state charges. This is most assuredly an erroneous interpretation of the "due diligence" standard required of the Commonwealth under statutory and case law. *See* Pa.R.Crim.P. 600(G); *Commonwealth v. Mines,* 797 A.2d 963, 964 (Pa.Super.2002), *appeal denied,* 571 Pa. 705, 812 A.2d 1229 (2002); *Woods,* 663 A.2d at 807–08.

4.  Within his constitutional claims, appellant also asserts unfairness in the testimony of the emergency room physician who examined the victim. This claim is totally undeveloped as a constitutional claim, comprises only vague assertions, and includes no citations of supporting case law. The claim is therefore waived.

¶ 9 On April 15, 2003, the first morning of his trial, appellant requested a continuance due to lack of preparedness, citing as explanation his detention in restrictive housing at the prison for the past few days. He further stated that he wanted to change his *pro se* status and have stand-by counsel Zang become lead counsel. At that point in the proceedings the jury had already been impaneled. In addition, appellant had filed two additional pre-trial pleadings that same week. Appellant had, however, refused to accept personal service of motions and discovery material the previous week, forcing the prosecutor to mail the documents. Nevertheless, the court granted appellant a continuance until 1:00 p.m., giving him further time to consult with his stand-by counsel in preparation for trial.

¶ 10 When court reconvened, appellant refused to appear, choosing to remain in the holding cell. The trial judge directed the sheriff to attempt to bring appellant to the courtroom. After a recess, when appellant was again in the courtroom, the judge appointed attorney Zang, who had been stand-by counsel, as lead counsel, pursuant to appellant's request. Appellant then asked to be excused from the proceedings and expressly threatened disruption. When the court denied his request to leave, appellant caused a disruption and was forcibly removed from the courtroom by the sheriff's deputies.

¶ 11 Attorney Zang then asked again for a continuance, claiming he was not capable of proceeding as he had seen neither preliminary hearing transcripts nor any discovery material. The court denied the request, stating that standby counsel had the responsibility to be prepared to take over the defense under circumstances of this nature. The jury was then brought into the courtroom, not having witnessed any of appellant's disruptive behavior. Attorney Zang renewed his motion for a continuance, based on his inability to put on a defense as appellant did not provide him with any information or discovery. The court denied the motion. The Commonwealth's first and only witness of the day was the victim. After direct examination, the court recessed for the day.

¶ 12 At the beginning of the second morning of trial, appellant stated in court that he did not wish to remain for trial and that he and his counsel had an agreement that counsel would not put on any defense on his behalf. Appellant then said "[y]ou guys might as well drag me out because I'm not staying," was disruptive, and was forcibly removed from the courtroom by several deputies. Attorney Zang reiterated that appellant had directed him not to enter any defense on his behalf and that any defense he did enter would be against his client's wishes.

¶ 13 Contrary to his client's self-devised strategy, Zang participated in the trial and cross-examined witnesses. However, at the close of the second day's testimony he relayed to the court his concerns for the safety of himself and his family due to threats by appellant. To put those threats on the record, the deputies who forcibly transported appellant from the courtroom testified as to the threat they had heard appellant make against his counsel.[5] Attorney Zang also stated that appellant had previously made another threat directly to him.

¶ 14 On the morning of the third day of trial, appellant again refused to come to

---

**5.** The testimony of the deputy sheriffs was that appellant had threatened his counsel's physical safety by stating "let Zang know that next time I see him I'm gonna whoop his punk ass." N.T., 4/17/03, at 230, 233. The jury was not present when the court heard this testimony.

the courtroom, even after being informed that the court was going to excuse his counsel. The court then granted counsel's request to be excused from any further representation of appellant. The jury was not present for any testimony regarding threats against counsel. The court instructed the jury that appellant had chosen to exercise his rights not to appear at trial and not to have counsel. The Commonwealth presented two more witnesses (a state trooper and the emergency room physician who examined the victim) and then rested. The jury found appellant guilty of three counts of simple assault, two counts of terroristic threats, and one count each of recklessly endangering another person, retaliation against a witness, and resisting arrest. The jury found appellant not guilty of false imprisonment and one count of assault.

¶ 15 For his sentencing hearing appellant again refused to come to the court room, although he had been personally served with notice and corrections' officers and sheriff's deputies went to his cell to retrieve him.

### II.a. Right to be Present at Trial

¶ 16 In the first of his constitutional claims, appellant contends that he was denied his right to a fair trial because he was forcibly removed from the courtroom and thus was not present at his trial.

¶ 17 The Supreme Court has recognized a defendant's Sixth Amendment right to be present in the courtroom for trial. *Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The Court has also recognized that there are limits to this right. For example, in *Taylor*, a defendant's voluntary absence from his trial was held to be a waiver of the right to be present. After the defendant chose not to

return to the courtroom for the afternoon session of his trial, the court proceeded with the trial in the defendant's absence, ultimately finding him guilty of selling cocaine. The Court found no trial court error, concluding that "the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *Taylor*, 414 U.S. at 20, 94 S.Ct. 194 (quoting *Allen*, 397 U.S. at 349, 90 S.Ct. 1057 (Brennan, J., concurring)).

¶ 18 In *Allen*, a *pro se* defendant with appointed stand-by counsel was forcibly removed from the courtroom due to disruptive, abusive behavior. The Court found nothing unconstitutional about this action, holding that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343, 90 S.Ct. 1057. The Court's opinion went on to state that trial judges must be given discretion to deal with "disruptive, contumacious, stubbornly defiant defendants." *Id.* The Court noted with approval that the defendant was repeatedly warned by the trial judge that he would be removed if he did not desist from his disruptive behavior and that he was given numerous opportunities to return if he would agree to conduct himself properly. *Id.* at 346, 90 S.Ct. 1057. Although removal of a defendant from the courtroom is an extreme measure, abusive, disruptive conduct cannot be permitted to degrade the judicial system, nor to impede trial. *Id.*

¶ 19 Our Supreme Court has also addressed the issue of removal of a disruptive criminal defendant from trial. The Pennsylvania Constitution grants to an ac-

cused the right to meet the witnesses against him face to face. Pa. Const. Art. I § 9. However, when a defendant is abusive and disruptive to the proceedings, the trial judge does not abuse his discretion in having him removed from the courtroom. *Commonwealth v. Basemore*, 525 Pa. 512, 524–27, 582 A.2d 861, 867–68 (1990), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992). In *Basemore*, the defendant verbally attacked the trial judge, berated the perspective jurors during *voir dire*, and made clear that he intended to disrupt the proceedings. In upholding the constitutionality of the defendant's removal from the courtroom, our Supreme Court found that the trial judge had followed the *Allen* guidelines by warning the defendant that he would be removed and by giving him many opportunities to return. The Court also noted that none of the persons chosen for the jury witnessed the defendant's abusive behavior and that the trial judge advised the jury that the defendant's absence was not related to his guilt. *Id.* at 527, 582 A.2d at 868.

¶ 20 After careful review of the facts of the present case in light of these precedents, we find no abuse of discretion by the trial judge in removing appellant from the courtroom. Appellant's desire to absent himself from the proceedings, as well as his intention to be disruptive if his request was not granted, was absolutely clear from his own words:

> Appellant: I don't think that I can sit through the proceedings without my behavior becoming disruptive and to eliminate getting a contempt of court or other charges, I wish to be excused from the proceedings in the light that I don't think we plan to offer any defense anyway relative to discussions with Attorney Zang. I feel that we've been prejudiced here severely and I don't plan to sit through this proceeding without dis-

rupting the proceedings so I would appreciate . . .

> Court: That will be your choice, Mr. Thomas.

N.T., 4/15/03, at 28.

> Appellant: Could I be removed, please, Your Honor?

> Court: No, you may not be removed. You are here for the trial as long as you are in custody. Have a seat.

> Appellant: Your Honor, I'm not staying for the trial.

> Court: Have a seat.

> Appellant: I'm not staying for trial, Your Honor.

> Court: That will be your choice.

> . . .

> Appellant: You guys might as well drag me out because I'm not staying.

N.T., 4/16/03, at 94.

¶ 21 After each of these exchanges between appellant and the court, appellant caused a disruption and was forcibly removed from the courtroom. By appellant's own words, his absence from the courtroom was, for all practical purposes, voluntary and intentional. The court warned appellant that if his disruptive conduct resulted in his removal from the courtroom, the trial would continue in his absence. The court advised him that his presence would be helpful to his counsel and that his absence would be highly prejudicial. In addition, the court gave appellant numerous opportunities to return to the trial and assist in his defense; appellant repeatedly refused. None of appellant's disruptive behavior was observed by the jury, and the judge was careful to instruct the jury that they were not to infer any evidence of guilt from his absence. The judge acted within her discretion both to preserve an atmosphere of decorum and respect and to keep the pro-

ceedings moving forward.[6] We find no error.

## II.b. Right to Self–Representation

¶ 22 Appellant's next constitutional claim is that he was denied his right to self-representation. This claim is baseless, as it is completely contradicted by the record. On June 20, 2002, appellant filed a motion to appear *pro se*, which the court granted after conducting a full colloquy on October 10, 2002. In an order filed on November 15, 2002, the court appointed attorney Zang as stand-by counsel. Five months later, at trial, appellant made clear that his "strategy" was not to appear and not to present a defense. *See* quotations from trial testimony, *supra* II.a. and *infra* II.c. Appellant's refusal to conduct a defense— either *pro se* or by cooperation with his stand-by counsel—can not now be twisted into a claim of deprivation of constitutional right.

## II.c. Right to Counsel

■ ¶ 23 Appellant's third constitutional claim, which is based on the right to counsel, has two parts. In the first part, appellant claims that his right to counsel was violated when the court appointed stand-by counsel Zang as lead counsel, in spite of his protestations of unpreparedness. A review of the facts reveals the fallacy of this claim.

¶ 24 Zang was appointed as stand-by counsel on November 15, 2002, a full five months before the trial. He appeared with appellant at a pretrial motion hearing on November 18, 2002, at which time the court explained the role of stand-by counsel:

> [My] understanding of this would be that you would not be here to be frontline on trying these matters, not to be frontline on arguing these matters, but to be available to assist in the event that Mr. Thomas would be unable for some reason to continue or if he were unable for some reason to continue in his own representation you would be in a position to take over the representation . . . .
>
> N.T., 11/18/02, at 15.

The November 18, 2002 hearing was continued, at appellant's request, until January 27, 2003 to give Zang ample opportunity to become familiar with the case. The trial did not begin until nearly three months later, in April.

¶ 25 Appellant repeatedly asserted his right to appear *pro se* and filed numerous documents *pro se*, up until the jury was impaneled and testimony was about to begin, at which time he claimed to be unprepared, sought a continuance, and requested that Zang be appointed lead counsel. N.T., 4/15/03, at 4. Contrary to appellant's contentions, a continuance *was* granted— for most of the morning, until 1:00 p.m. in the afternoon.

¶ 26 For the afternoon session, the Commonwealth called its first witness, the victim. After direct examination, the court recessed for the day, thus providing de-

---

**6.** The court implied that appellant could not waive his right to be present in the courtroom. This was error, which the court subsequently recognized and addressed. N.T., 4/16/03, at 215. Our Supreme Court has held that a criminal defendant can waive his right to be present at his trial if the court conducts a colloquy to ensure that the waiver is knowing and intelligent. *Commonwealth v. Vega*, 553 Pa. 255, 719 A.2d 227 (1998). *See also Commonwealth v. Tizer*, 454 Pa.Super: 1, 684 A.2d 597, 604–05 (1996) (reviewing the trial court's colloquy and finding that the defendant's waiver of his right to be present at trial was made knowingly and intelligently). We do not, however, find the trial court's misunderstanding of this case law to constitute reversible error. Appellant was removed from the courtroom based on his intentionally disruptive behavior, and our analysis of this issue thus falls squarely within the precedents of *Allen* and *Basemore*.

fense counsel more time to prepare for cross-examination. Our review of the transcript shows that defense counsel participated in the trial, made numerous objections to aspects of the testimony, and cross-examined the Commonwealth's witnesses.

¶ 27 We find no abuse of discretion by the trial court in going forward with the trial. The court made a factual determination that appellant was prepared for trial, based partially on his filing of two additional *pro se* motions that very week. Attorney Zang, whose status was changed from stand-by to lead counsel at appellant's request, had been on notice for the previous five months that he might have to assume the role of lead counsel at any point. He offered only one explanation for his claims of unpreparedness: lack of access to transcripts and discovery. This rationale was not explored on the record, but the clear implication of counsel's statements is that his client limited his access to these materials. There was no element of haste or surprise. Several pretrial motion hearings had been held in the seven months since appellant had been returned to state custody, and appellant had been granted continuances at two of these hearings. The jury was impaneled and waiting to receive testimony. The Commonwealth's witnesses were on notice of the trial and prepared to give testimony. On this record, we cannot agree with appellant that further delays must be tolerated by the court.

¶ 28 In the second part of appellant's right to counsel claim, he alleges trial court error in allowing attorney Zang to withdraw on the third day of trial. Although appellant had maintained his desire to proceed *pro se* for approximately ten months prior to his trial, on the day that testimony was to begin, appellant re-invoked his right to counsel. The court then appointed stand-by counsel Zang as lead counsel, pursuant to appellant's request. At the end of the second day of trial, attorney Zang requested the court's permission to withdraw, based on threats to his safety from appellant. The court granted Zang's request on the following morning, leaving appellant to complete his trial without the benefit of counsel.

¶ 29 Although a criminal defendant has the right to be represented by counsel, the right can be waived or forfeited. We find persuasive the Third Circuit Court's distinction between waiver and forfeiture. *United States v. Goldberg*, 67 F.3d 1092, 1099–101 (3d Cir.1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1099. It is well established that waiver of the right to counsel is valid only if it is made voluntarily, knowingly and intelligently. Pa. R.Crim.P. 121(C); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Commonwealth v. Brazil*, 549 Pa. 321, 325–26, 701 A.2d 216, 218 (1997); *Commonwealth v. Barnette*, 445 Pa. 288, 290–91, 285 A.2d 141, 142–43 (1971). By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir.2004) (quoting *Goldberg*, 67 F.3d at 1100–02).

¶ 30 The Third Circuit Court acknowledged that the United States Supreme Court has not expressly ruled on the question of forfeiture of the right to counsel, nor on the level of misconduct or defiance that may give rise to forfeiture. *Fischetti v. Johnson*, 384 F.3d 140, 152 (3d Cir. 2004). Nonetheless, federal circuit courts have found forfeiture of the right to counsel under several circumstances, including when a defendant physically attacked his

attorney, *United States v. Leggett,* 162 F.3d 237 (3d Cir.1998), *cert. denied,* 528 U.S. 868, 120 S.Ct. 167, 145 L.Ed.2d 141 (1999); when a defendant was abusive, threatening, and coercive to his attorney, *United States v. McLeod,* 53 F.3d 322, 326 (11th Cir.1995); and when a defendant threatened counsel with physical confrontation, verbally abused him, refused to cooperate with him in preparing a defense, and attempted to coerce him into filing frivolous claims. *Thomas,* 357 F.3d at 363.[7]

◼ ¶ 31 It is undisputed that appellant was unrepresented by counsel during the last half-day of his trial; the question before us is whether appellant waived or forfeited his right to counsel. We consider first the possibility of waiver. After appellant re-invoked his right to counsel on the first day of trial, nothing in the record indicates that appellant subsequently waived his counsel's withdrawal. Appellant had refused to participate in his trial, and he was not in the courtroom when counsel requested and was granted withdrawal. There is no record of the court engaging appellant in a colloquy to ensure a knowing and intelligent waiver, as required per Pennsylvania Rule of Criminal Procedure 121 and *Brazil,* 549 Pa. at 326, 701 A.2d at 219. Thus, we cannot find that appellant waived his right to counsel.

◼ ¶ 32 We do find, however, that appellant forfeited his right to counsel through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate in his own defense. By the time of appellant's trial, the court had appointed five different attorneys to represent him. Appellant refused to be present at the trial to assist his latest counsel, and he attempted to take back his trial preparation mate-

rials from counsel. Appellant's own words to the court made his self-devised "strategy" abundantly clear: he expected his counsel to follow his instructions and to present no defense. On the first afternoon of trial, appellant stated in court that "I don't think we plan to offer any defense anyway relative to discussions with Attorney Zang." N.T., 4/15/, at 28. On the second morning of trial the following exchange took place:

> Appellant: That there was an agreement between this counsel and I that upon giving him the duties to proceed as counsel, that he was not going to enter in any defense on behalf . . .
>
> Court: That is his choice to make. I'm not directing him what to do. Have a seat.
>
> Appellant: Your Honor, I just wanted to get it on record if I could that there was an agreement between counsel and ourselves.
>
> Court: You got it on record. Have a seat.

N.T., 4/16/03, at 94.

Attorney Zang acted within his professional judgment to participate in the trial and cross-examine the Commonwealth's witnesses, while acknowledging that appellant had directed him "not to enter a defense and that any defense . . . would be in contradiction to [appellant's] wishes." N.T., 4/16/03, at 96.

¶ 33 On the second day of trial, appellant threatened attorney Zang in the presence of the warden and sheriff's deputies while he was being transported from the courtroom. Appellant's threat to attorney Zang was put on the record, in the absence of the jury, by testimony of the deputies. In addition, attorney Zang stated to the court that appellant had, on a previous occasion,

---

**7.** *United States v. Thomas,* 357 F.3d at 357, is the Third Circuit Court's affirmation of appel-

lant's federal conviction for possession with intent to deliver cocaine.

threatened his as well as his family's physical safety. The trial court granted Zang's request to withdraw as counsel, with the threats of physical violence being the proverbial last straw in appellant's very serious misconduct.

¶ 34 We are aware that the court granted counsel's request to withdraw, leaving appellant unrepresented, without a hearing in which appellant participated. Given the serious nature of the forfeiture of the right to counsel, we find persuasive the Third Circuit Court's holding that forfeiture should not be based on factual findings presented at an *ex parte* hearing. *Leggett,* 162 F.3d at 250 (citing *Goldberg,* 67 F.3d at 1102). However, under the facts of this case, two factors compel our finding of forfeiture even in the absence of a hearing attended by appellant.

¶ 35 First, appellant's refusal to cooperate and his expectation that his counsel would merely execute his wishes to present no defense were unmistakably clear from appellant's own words to the court. Appellant's strategy to undermine the trial by instructing counsel to proceed against his professional judgment could not have been clearer. We find that no further hearing was necessary to develop this aspect of appellant's misconduct, as it had been displayed in the courtroom, to the trial judge. These circumstances are similar to those faced by the Third Circuit Court in *Leggett,* 162 F.3d at 250, where the court held that no evidentiary hearing was necessary prior to a finding of forfeiture of the right to counsel based on defendant's physical assault on his counsel in full view of the district court.

¶ 36 Our second reason for not requiring appellant's participation in an evidentiary hearing prior to a finding of forfeiture in this case is that appellant deliberately absented himself from the proceedings, in spite of the court's efforts to secure his presence in the courtroom. Appellant violently refused to remain in the courtroom throughout his trial. His physical disruption of the proceedings necessitated his forcible removal two days in a row. On the third morning of trial, before the court announced that it was granting attorney Zang's request to withdraw, it notified appellant that it was planning to dismiss his counsel because of his threats and requested yet again his presence in the courtroom. This message was taken to appellant at the request of the court by the warden of the Blair County prison, where appellant was incarcerated. When the deputies attempted to bring appellant to the courtroom, he verbally and physically refused to accompany them. Under these circumstances, when appellant refused to come to the courtroom, a hearing was impossible. The trial judge committed no error in determining that the judiciary's orderly proceedings would not be subverted by appellant's obstinate, obstructive behavior.

¶ 37 In finding forfeiture of the right to counsel, we find that the record amply supports the trial court's determination that appellant "put himself in this position intentionally." N.T., 4/16/03, at 95. To reward appellant for his extremely serious, abusive, and threatening misconduct would be illogical and against the interests of justice. Therefore, we find no abuse of discretion in the trial court's decision to proceed with the trial. Appellant forfeited his right to counsel through continuing, extremely serious misconduct.

### III. Change of Venue

¶ 38 Appellant's next claim is that the trial court erred in denying his motion for a change of venue based upon extensive pre-trial publicity. A change of venue is necessary "if a fair and impartial jury cannot be selected in the county in which the crime occurred," a determina-

tion that the trial court is best suited to make. *Commonwealth v. Karenbauer,* 552 Pa. 420, 433–34, 715 A.2d 1086, 1092 (1998), *cert. denied,* 526 U.S. 1021, 119 S.Ct. 1258, 143 L.Ed.2d 354 (1999). Thus, in reviewing a denial of a motion for a change of venue, we will disturb the trial court's decision only if it represents an abuse of discretion. *Id.* at 433, 715 A.2d at 1092.

¶ 39 The mere occurrence of pre-trial publicity does not warrant a change of venue. In general, the defendant must show that the publicity led to actual prejudice. *Id.* at 434, 715 A.2d at 1092. However, under limited circumstances, *e.g.* after sensational, inflammatory, and slanted pre-trial publicity, the court will presume that the publicity was prejudicial. *Id.* Even if this presumption applies, the defendant must show that the "pre-trial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated." *Id.*

¶ 40 Appellant has utterly failed to carry this burden. Although appellant alleges the existence of pervasive pre-trial publicity concerning both his federal and state charges, the record includes only one newspaper article from September, 2002 (nearly seven months before his state trial), which is not in the least sensational. The trial court did not abuse its discretion in denying appellant's meritless motion for a change of venue.

### IV. Consolidation of Charges

¶ 41 Appellant's fourth claim is that the trial court erred in consolidating charges which arose from two separate incidents on different days. In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. *Commonwealth v. Collins,* 550 Pa. 46, 54, 703 A.2d 418, 422 (1997), *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998). Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa. R.Crim.Pro. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim. Pro. 583.

¶ 42 Our Supreme Court has established a three part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine

whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses. *Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 497 (1988) (quoted in *Collins, supra* at 55, 703 A.2d at 422).

¶ 43 In the present case we can find no abuse of discretion by the trial court in consolidating the charges, as all of the elements of the *Lark* test are met. Appellant was charged with assaulting his girlfriend on two separate days. The second assault occurred the day that appellant was released from jail, after the victim refused to testify against him at a hearing on the first assault. Evidence of each of the assaults would be admissible in a prosecution for the other, as the evidence con-

stitutes a "chain or sequence of events that formed the history of the case, [and] is part of the natural development of the case." *Commonwealth v. Drumheller*, 570 Pa. 117, 138, 808 A.2d 893, 905 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003). *See also Lark*, 518 Pa. at 303, 543 A.2d at 497 (discussing *"res gestae"* or "complete story" evidence, including evidence of other crimes, as admissible to show context of the crime and thus complete the story of the crime). Furthermore, evidence of appellant's relationship with the victim is admissible to prove ill will, motive, or malice. *Commonwealth v. Chandler*, 554 Pa. 401, 409, 721 A.2d 1040, 1044 (1998) (quoting *Commonwealth v. Ulatoski*, 472 Pa. 53, 60–61, 371 A.2d 186, 190 (1977)).

¶ 44 We also find that the evidence was easily separable by the jury into different incidents on different days that gave rise to different crimes. We find no reason to suspect jury confusion. The trial court gave clear directions to the jury, making even less likely any danger of confusion. Finally, we do not find undue prejudice to appellant in consolidation of the offenses for trial. The evidence showed motive, malice, ill-will, and complete story of the relationship—appellant cannot reduce its significance to showing merely propensity. The trial court did not abuse its discretion in consolidating the offenses for trial.

## V. Continuance of Sentencing Hearing

¶ 45 Appellant's fifth claim is that the trial court erred when it failed to postpone his sentencing hearing to allow his privately-retained counsel more time to prepare. We will reverse a trial court's denial of a motion for a continuance only upon a showing of abuse of discretion. *Commonwealth v. McAleer*, 561 Pa. 129, 135, 748 A.2d 670, 673 (2000). Abuse of discretion is not merely an error of judg-

ment, but rather is a manifestly unreasonable judgment, a result of prejudice, bias or ill-will, or a misapplication of law. *Id.*

¶ 46 A criminal defendant has a constitutional right to counsel of his own choosing, at his own expense. *Commonwealth v. Rucker*, 563 Pa. 347, 350, 761 A.2d 541, 542–43 (2000); *Commonwealth v. Novak*, 395 Pa. 199, 213, 150 A.2d 102, 109 (1959), *cert. denied*, 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959). However, this right "must be exercised at a reasonable time and in a reasonable manner." *Novak*, 395 Pa. at 214, 150 A.2d at 110. The right of a defendant to choose his own counsel "must be weighed against and may be reasonably restricted by 'the state's interest in the swift and efficient administration of criminal justice.'" *Rucker*, 563 Pa. at 351, 761 A.2d at 543 (quoting *Commonwealth v. Robinson*, 468 Pa. 575, 592, 364 A.2d 665, 674 (1976) (citation omitted)). A defendant "clearly cannot be permitted to utilize his right to choose his own counsel so as *unreasonably* to clog the machinery of justice and hamper and delay the state in its efforts to do justice with regard both to him and to others whose rights to a speedy trial may thereby be affected." *Id.* (quoting *Robinson*, 468 Pa. at 592–93, 364 A.2d at 674 (emphasis in original)).

¶ 47 Our Supreme Court has suggested factors that the court should consider in ruling on a request for a continuance to secure the services of private counsel. *Commonwealth v. Ross*, 465 Pa. 421, 429, 350 A.2d 836, 840 (1976). The court should determine whether the defendant "had been given some actual opportunity to obtain counsel of his own choice." *Id.* In addition, the court should take into account actual or circumstantial evidence that the defendant sought to delay the proceedings in bad faith. *Id.* In *Ross*, our Supreme Court reversed an order denying

a continuance, based on its determinations that the defendant had actively sought counsel during the short opportunity that he had to do so and that there was no evidence of bad faith on his part. *Id.* at 428–29, 350 A.2d at 839–40.

¶ 48 In the present case the trial court denied appellant's request for a continuance at his sentencing hearing because he "did not exercise his right to chose counsel at a reasonable time nor in a reasonable manner." Trial Court Memorandum and Order, 12/2/03, at 16. We find no error in the trial court's ruling. Immediately after appellant's guilty verdict on April 17, 2003, the court scheduled sentencing for June 24, 2003. The sentencing hearing was continued twice, one time because the court believed that appellant had not received proper notice. On June 30, 2003, a deputy sheriff personally served appellant with notice that his sentencing hearing was to take place on July 10, 2003. On the morning of the sentencing hearing, nearly three months after appellant's conviction, the court received an entry of appearance and emergency motion to postpone sentencing filed by attorney Terrell. Attorney Terrell's rationale for requesting a continuance was that he had only recently been retained and had not had time to review appellant's pre-sentence investigation.

¶ 49 Appellant had more than ample time to retain counsel. His sentencing hearing took place nearly three months after his conviction, and his trial took place approximately two years after his arrest and seven months after his return to state custody. Current counsel is appellant's seventh counsel in the various proceedings over the two years since his arrest. Counsel's argument that he had insufficient time to review the pre-sentence investigation is weakened even further by the court's observation that, since appellant had refused to comply with or provide any

information for the pre-sentence investigation, everything in the investigation was a matter of record to which counsel would and could have had access.

¶ 50 The trial court determined that appellant's request for a continuance was made for delay purposes only, basing its determination on appellant's failure to cooperate during previously scheduled sentencing hearings, during his trial, with his own defense, and with several court-appointed counsel. N.T., 7/10/03, at 7–8. Appellant refused to attend the sentencing hearing, even after two sheriff's deputies went to his cell to attempt to transport him to the courtroom. The Commonwealth, the victim, and a state trooper were all prepared to participate in the hearing. After thorough review, we find ample support in the record for the court's determination that appellant's request for a continuance was made in bad faith, for the purpose of delaying sentencing yet again. The trial court committed no error in denying appellant's request for a continuance.

## VI. Sentencing

¶ 51 Within the constraints of the Sentencing Code, the trial court has broad discretion to fashion a sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *Commonwealth v. Mouzon,* 571 Pa. 419, 423, 812 A.2d 617, 620 (2002); *Commonwealth v. Smithton,* 429 Pa.Super. 55, 631 A.2d 1053, 1055 (1993). The legality of a sentence, but not its discretionary aspects, may be appealed as of right. 42 Pa.C.S.A. § 9781; *Mouzon,* 571 Pa. at 425, 812 A.2d at 621. Appellant presents two challenges to the legality of his sentence: the first concerns merger of crimes for sentencing and the second concerns imposition of fines without consideration of ability to pay. Appellant's final challenge to his sentence—that the court

considered an improper factor—is a challenge to the discretionary aspects of sentencing. We address first the challenges to legality of sentence.

¶ 52 Appellant's first claim concerning legality of sentence is that the crimes of simple assault, recklessly endangering another person, and terroristic threats merge for sentencing purposes.[8] Since appellant was sentenced for each of those crimes, he contends that his sentence was excessive. Our Supreme Court has held that "the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." *Commonwealth v. Anderson,* 538 Pa. 574, 579, 650 A.2d 20, 22 (1994). If two crimes each require proof of at least one element that the other does not, then the crimes are not greater and lesser included offenses, and therefore the sentences do not merge. *Id.* at 581–82, 650 A.2d at 23–24.

■ ¶ 53 In *Commonwealth v. Cavanaugh,* 278 Pa.Super. 542, 420 A.2d 674, 676 (1980), this Court held that simple assault is a lesser included offense of recklessly endangering another person and thus the two crimes merge for sentencing purposes. *See also Commonwealth v. Klein,* 795 A.2d 424, 430 (Pa.Super.2002). In the present case, apparently on the same facts, the trial court sentenced appellant to twelve to twenty-four months incarceration for simple assault and to a consecutive term of the same duration for recklessly endangering another person.[9]

Thus, appellant is correct that the trial court erred in sentencing him for both simple assault and recklessly endangering another person. We therefore remand for resentencing.

■ ¶ 54 To determine if the crime of terroristic threats merges with either simple assault or recklessly endangering another person, we look first at the elements of each crime. "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [ ] commit any crime of violence with intent to terrorize another." 18 Pa. C.S.A. § 2706(a)(1). The relevant portion of the simple assault statute provides that a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). A person is guilty of recklessly endangering another person if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

¶ 55 A review of these elements reveals that the crime of terroristic threats is not a lesser or greater included offense of either of the other two. The crime of terroristic threats does not require an attempt to cause or actual causation of bodily injury, as does the relevant provision of simple assault. The crime of terroristic threats also does not require conduct that may place another in danger of serious bodily injury or death, as does recklessly

8. Although poorly developed, appellant's claim apparently has two parts. Regarding the assault of March 23, 2001, appellant appears to contend that his convictions for simple assault, recklessly endangering another person, and terroristic threats merge for sentencing. Regarding the assault of April 18, 2001, appellant appears to contend that his convictions for simple assault and terroristic threats merge for sentencing. The crimes committed on the two different days cannot

merge, since they stem from two different criminal acts. *Commonwealth v. Gatling,* 570 Pa. 34, 48–49, 807 A.2d 890, 899 (2002) (plurality opinion); *Commonwealth v. Healey,* 836 A.2d 156, 158–59 (Pa.Super.2003).

9. The court also sentenced appellant to pay costs of prosecution and a $1000 fine for each crime.

endangering another person. Rather, the crime of terroristic threats requires communication of a threat, which is not an element in either of the other two crimes. In addition, the intent element in terroristic threats is distinct from that of the other two crimes. Thus, by the analysis in *Anderson*, 538 Pa. at 574, 650 A.2d at 20, the crime of terroristic threats does not merge for sentencing with simple assault or recklessly endangering another person, and the trial court did not commit legal error in imposing separate sentences for these crimes.[10]

¶ 56 Appellant next contends that the court erred in sentencing him to pay fines in the amount of $6000 without a determination of his ability to pay. By statute, the court may impose a fine in addition to other sentence when, *inter alia*, "the court is of the opinion that a fine is specially adapted to deterrence of the crime involved or to the correction of the defendant." 42 Pa.C.S.A. § 9726(b)(2). However, "[t]he court shall not sentence a defendant to pay a fine unless it appears of record that [ ] the defendant is or will be able to pay the fine." 42 Pa.C.S.A. § 9726(c)(1); *George v. Beard*, 824 A.2d 393, 395 (Pa.Commw.), *aff'd*, 574 Pa. 407, 831 A.2d 597 (2003). Imposition of a fine is not precluded merely because the defendant cannot pay the fine immediately or because he cannot do so without difficulty. *Commonwealth v. Church*, 513 Pa. 534, 540, 522 A.2d 30, 33 (1987).

¶ 57 In *Commonwealth v. Gaskin*, 325 Pa.Super. 349, 472 A.2d 1154 (1984), this Court vacated the imposition of a fine of $2000, imposed along with a term of imprisonment, for possession with intent to deliver heroin. The sentencing judge noted that the defendant had no stable employment, having lived hand to mouth for many years. *Id.* at 1158. The pre-sentence investigation report revealed that defendant Gaskin had no financial assets or liabilities. *Id.* From the record, this Court found insufficient information to support a finding that the defendant had the ability to pay the fine, and thus vacated the order imposing the fine. *Id.*

¶ 58 In the present case, the trial court did not make specific findings of appellant's ability to pay the fine imposed. The court stated merely that it had "all the appropriate information," knowing appellant's history and his recent ten year sentence to federal prison. Trial Court Memorandum and Order, 12/2/03, at 17. We find nothing in the record to support the trial court's general finding that appellant has or will have the ability to pay a fine of $6,000. However, we also note that the pre-sentence investigation report was not included in the certified record, so we do not know if this report sheds any light on appellant's ability to pay. We therefore remand to the trial court for re-sentencing after a determination of appellant's ability to pay a fine.

¶ 59 The final sentencing issue raised by appellant—that the court relied on an improper factor in imposing sentences in the aggravated range—is a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Jones*, 418 Pa.Super. 93,

---

**10.** Appellant makes another allegation concerning his sentence for assault, *i.e.* that he was sentenced under two separate sections of the simple assault statute. Appellant has apparently misread both the sentencing order and the trial court's opinion. *See* Sentencing Order, 7/10/03, at 1–4, 6; Trial Court Memorandum and Order, 12/2/03, at 16. Appellant

was sentenced for the first count of simple assault. As the trial court made very clear, it imposed no further sentence for the other assault convictions, finding merger. Appellant's insistence on presenting factually unfounded grounds for review, even after being informed of his error by the trial court, is of no value as an appellate strategy.

613 A.2d 587, 590–92 (1992) (en banc), *overruled on other grounds by Mouzon*, 571 Pa. at 419, 812 A.2d at 617. An appeal of the discretionary aspects of a sentence is not granted of right, but rather is granted only "where it appears that there is a substantial question that the sentence imposed is not appropriate." 42 Pa.C.S.A. § 9781(b); *Jones*, 613 A.2d at 590. Furthermore, an appellant who seeks review of the discretionary aspects of his sentence must include in his brief "a concise statement of the reasons relied upon for allowance of appeal." Pa.R.A.P. 2119(f).

¶ 60 Appellant has neither included a Rule 2119(f) statement, nor developed a substantial question. Therefore, he has waived this discretionary challenge. Even if we were not to find that this issue was waived, we would find it devoid of merit. Appellant's specific contention is that "[a]t a glance, it would appear the Court utilized [appellant's] courtroom conduct as a reason for imposing its sentence." Appellant's brief, at 31. Thorough review of the record reveals absolutely no support for appellant's contention that the court relied on this improper factor in determining sentence.

¶ 61 During appellant's sentencing hearing, the court thoroughly explained its reasons for imposing sentence in the aggravated range. These reasons included the following: (i) appellant's numerous (16) adult convictions and four paroles; (ii) the court's perception that appellant is extremely dangerous and a grave threat to society, as evidenced by his escalating, terrorizing, violent crimes against the victim; his lack of remorse or contrition; and his defiant and disrespectful attitude toward those who try to assist him, toward the legal system, and toward society; (iii) appellant's need for substantial incarceration to comprehend the reality that he lives in a society of rules and laws. All of these factors were properly considered by the trial court in fashioning appellant's sentence. *See Smithton*, 631 A.2d at 1057; *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 188, *appeal denied*, 535 Pa. 657, 634 A.2d 220 (1993); *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1006 (1992), *appeal denied*, 535 Pa. 673, 636 A.2d 632 (1993); *Jones*, 613 A.2d at 591. We find no error.

## VII. Jury Charge

¶ 62 Appellant's final contention of error is that the jury charge regarding assault and retaliation against a witness was improper because it did not include definitions of attempt, physical menace, imminent, witness, retaliation, force, violence, and deception.

¶ 63 As an appellate court reviewing a challenge to a jury instruction, we consider the charge as a whole to determine if it is fair and complete. *Commonwealth v. Johnson*, 572 Pa. 283, 313, 815 A.2d 563, 580 (2002); *Commonwealth v. Hawkins*, 549 Pa. 352, 390–91, 701 A.2d 492, 511 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). The trial court has broad discretion to choose its own wording, as long as its instruction clearly, adequately, and accurately reflects the law. *Johnson*, 572 Pa. at 313, 815 A.2d at 580. We find reversible error only when there has been an abuse of discretion or inaccurate statement of law. *Hawkins*, 549 Pa. at 391, 701 A.2d at 511.

¶ 64 Several of appellant's claims regarding the charge to the jury are belied by the certified record. Contrary to appellant's assertions, the trial judge did define—clearly, adequately, and accurately— the terms attempt and physical menace in his charge regarding the crime of assault. N.T., 4/17/03, at 282, 286–87. The judge did not specifically define imminent, but

we find that, in the context of the rest of the jury charge, this omission does not constitute reversible error, as a lay person did not need judicial guidance to understand the term. In further support of this view, we note that the Pennsylvania Standard Jury Instruction for simple assault/physical menace does not include a definition of imminent.[11] *See* Pa. SSJI (Crim.) 6th Supp. 15.2701(D). Appellant incorrectly implies that the jury sought additional instructions from the court on the definition of attempt, physical menace, and imminent. The jury requested clarification of only one point: what constitutes bodily injury. The judge re-charged the jury on assault, and the jury delivered its verdict thirty minutes later. There is absolutely no indication of jury confusion.

¶ 65 The trial judge also clearly, adequately, and accurately described the law relevant to the crime of retaliation against a witness. Appellant's claim that the judge did not define witness is totally lacking in merit. The judge specified numerous times that the witness in question was the victim, and that, to find appellant guilty, the jury had to find that appellant harmed the victim in retaliation for her complaints to police about appellant's March 23, 2001 domestic assault. N.T., 4/17/03, at 288–89. Particularly in the context of the judge's thorough jury charge on this crime, we find that the definition of retaliation is well within the grasp of lay persons without judicial guidance.

■ ¶ 66 Appellant's final contention concerns an additional question on the verdict slip, in conjunction with the charge of retaliation against a witness or victim: "If guilty, do you find the defendant used force, violence or deception against the victim?" The jury found appellant guilty and answered this question in the affirmative. Appellant protests the court's failure to define the terms force, violence, or deception. Comprehension of these terms in the context utilized requires only common knowledge and common sense, not judicial instruction. We see no error in the judge's failure to articulate a definition of each of these words.

¶ 67 We affirm in part and vacate in part and remand for re-sentencing consistent with this opinion.

¶ 68 Affirmed in part and remanded in part. Jurisdiction relinquished.

---

11. We are aware that in *Commonwealth v. Robinson*, 284 Pa.Super. 152, 425 A.2d 748, 750 (1980), this Court found that imminent was among those legal terms in the statutory description of simple assault/physical menace that a lay person does not "necessarily understand without judicial guidance." We distinguish *Robinson*, where the jury charge was short and sparse and incomplete, from the thorough charge given by the trial court in the case at bar.