J-S20031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEON EUGENE HORST | : | |
| | : | |
| Appellant | : | No. 1527 MDA 2020 |

Appeal from the PCRA Order Entered October 13, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0002085-2017

BEFORE:  NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED:  AUGUST 12, 2021**

Leon Eugene Horst ("Horst") appeals from the Order denying his Petition

for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its Opinion, the PCRA court set forth the procedural history underlying

the instant appeal as follows:

> On June 19, 2018, [Horst] was found guilty by a Lebanon
> County jury of numerous drug-related offenses.  He was
> sentenced on August 1, 2018[,] to serve 6-12 years in a State
> Correctional facility.  [Horst] then pursued a direct appeal [in]
> which he challenged [the trial court's] decision to deny his
> Suppression Motion.  That appeal was rejected by Pennsylvania's
> Superior Court on May 13, 2019.  [*See Commonwealth v.*
> *Horst*, 217 A.3d 394 (Pa. Super. 2019).]
>
> On May 13, 2020, [Horst] filed a timely PCRA Petition.  [The
> PCRA court] appointed counsel to represent him.  On July 14,

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

2020, counsel filed an Amended PCRA [Petition] in which [Horst] raised three issues.

….

[The PCRA court] conducted a [] hearing on October 9, 2020.  Three days later, [the PCRA court] issued a six-page Order [denying Horst's] PCRA.  Thereafter, [Horst] filed an appeal….

PCRA Court Opinion, 12/10/20, at 2.  In response to the PCRA court's Order,

Horst filed a Pa.R.A.P. 1925(b) Concise Statement of matters complained of

on appeal.

Horst presents the following claims for our review:

Did the PCRA court err in denying [Horst] the relief sought because the [trial] court applied the wrong legal standard for fines under [42 Pa.C.S.A.] § 9726(c)[,] when it substituted factual findings at the PCRA hearing for findings on the record at [s]entencing?

Brief for Appellant at 4.

Horst claims that the trial court imposed an illegal sentence by ordering

him to pay a $100 fine.  *Id.* at 10.  Horst argues that the trial court's authority

to impose a fine is conditioned upon proof that a defendant has the ability to

pay the fine.  *Id.* at 10.  Citing 42 Pa.C.S.A. § 9726, Horst asserts that the

trial court was required, on the record, to determine whether he had the ability

to pay the fine imposed by the trial court.  Brief for Appellant at 11.  Horst

acknowledges that, at the sentencing hearing, the trial court referred to "a

pre-sentence report, the facts presented at trial and all other factors

presented[.]" *Id.* at 11-12 (citation omitted).  However, Horst contends that

the trial court failed to identify the particular facts relied upon by the trial court

in imposing a fine of $100.00. *Id.* at 12. Horst argues that it was not his burden to object to the illegal sentence at the sentencing hearing. *Id.* at 13. Finally, Horst states, the PCRA court acknowledged that the trial court did not "conduct an extensive colloquy of [Horst] regarding his finances at the time of sentencing." *Id.* at 14 (citation omitted). Thus, Horst claims that his $100.00 fine constituted an illegal sentence. *Id.*

As our Supreme Court has explained,

[u]pon reviewing an order in a PCRA matter, we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this court applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Horst challenges the legality of his sentence. *Commonwealth v. Ford*, 217 A.3d 824, 827 (Pa. 2019) (noting that a claim that a trial court imposed a non-mandatory fine without conducting an ability-to-pay determination "constitutes a nonwaivable challenge to the legality of the sentence"). "[A] challenge to the legality of a sentence may be appealed as of right" and "can never be waived." *Commonwealth v. Smith*, 544 A.2d 991, 994 (Pa. Super. 1988) (*en banc*); *see also* 42 Pa.C.S.A. § 9781(a) (recognizing that "[t]he

defendant or the Commonwealth may appeal as of right the legality of the sentence."). "A legality issue is essentially a claim that the trial court did not have jurisdiction to impose the sentence which it handed down." *Smith*, 544 A.2d at 994.

Regarding the imposition of a fine as an additional sentence, section 9726 provides, in relevant part, as follows:

> **(b) Fine as additional sentence.**—The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, when:
>
>> (1) the defendant has derived a pecuniary gain from the crime; or
>>
>> (2) the court is of the opinion that a fine is specially adapted to deterrence of the crime involved or to the correction of the defendant.
>
> **(c) Exception.**—The court shall not sentence a defendant to pay a fine unless it appears of record that:
>
>> (1) the defendant is or will be able to pay the fine; and
>>
>> (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.
>
> **(d) Financial resources.**—In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa.C.S.A. § 9726.

As our Supreme Court has explained, "[s]ubsection 9726(c) does not put the burden on defendants to inform the court that they might have trouble paying a fine. Instead, it instructs sentencing courts not to impose a fine

absent record evidence of the defendant's ability to pay." ***Ford***, 217 A.3d at 829 (citing 42 Pa.C.S.A. § 9726(c)).

In ***Commonwealth v. Thomas***, 879 A.2d 246 (Pa. Super. 2005), the trial court, when imposing a fine, did not make "specific findings of [the defendant's] ability to pay the fine imposed," but rather merely stated that "it had 'all the appropriate information.'" ***Id.*** at 264. Notwithstanding, this Court found the record did not support the court's "general finding that [the defendant] has or will have the ability to pay a fine." ***Id.*** In particular, our Court observed that the pre-sentence investigation report ("PSI") was not in the certified record; therefore, this Court did not know if it would "shed[] any light on [the defendant's] ability to pay." ***Id.*** Consequently, this Court remanded to the trial court for a "re-sentencing after a determination of [the defendant's] ability to pay a fine." ***Id.***

At the sentencing hearing in the instant case, the trial court stated that it had reviewed the PSI and considered the facts presented at trial "and all other factors presented" prior to sentencing Horst. N.T. (Sentencing), 8/1/18, at 7. However, the trial court made no express finding regarding Horst's ability to pay the fine.

In its Opinion, the PCRA court judge, who also had sentenced Horst, acknowledged that he "did not conduct an extensive colloquy of [Horst] regarding his finances at the time of sentence." PCRA Court Opinion, 12/10/20, at 6. However, the PCRA court judge explained that he also had

presided over Horst's trial and, as a result, had "significant information pertinent to [Horst's] finances[.]" *Id.* The PCRA court stated that the PSI also included information regarding Horst's finances. *Id.* In rejecting Horst's claim, the PCRA court explained that, at sentencing, the court was aware

- That [Horst] was employed at Hauck Exteriors earning $22.00 per hour;

- That when [Horst] was arrested, $7,000.00 was found on his person;

- That when police conducted a search of [Horst's] residence, they found over $19,000.00 in cash;

- That [Horst] owned his own vehicle; [and]

- That [Horst] was able to pay private counsel to represent him.

*Id.* at 6.

Our review discloses that the PSI is not included in the certified record. However, the sentencing judge also had served as the trial judge. At trial, Horst testified that he presently was employed as a roofer, and previously had been employed "setting modular homes." N.T. (Trial), 6/19/18, at 112. Horst confirmed at trial that police found him in possession of $7,000.00, but stated that he "had worked for it for many years." *Id.* at 116. According to Horst, he was going to use the funds to pay for his private counsel, and to purchase a trailer. *Id.* Thus, these facts were known to the sentencing court.

At the PCRA hearing, Horst testified regarding the information he had provided to the probation department investigators for the preparation of the

PSI. N.T., 10/9/20, at 12-14. Horst confirmed telling investigators that he was employed by Houck's Exteriors, and was earning approximately $22.00 per hour. *Id.* at 12. Horst again testified that the $7,000.00 found on his person was earned legally.[2] *Id.* at 12-13. Horst confirmed his trial testimony that the $19,000.00 found at his residence was earned by him as a result of his legitimate work. *Id.* at 13.

Based upon our review, it appeared of record that, at the time of sentencing, Horst "is or will be able to pay the fine[,]" in compliance with 42 Pa.C.S.A. § 9726(c). Because we discern no illegality in Horst's sentence of the $100.00 fine, we affirm the PCRA court's Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/12/2021

---

[2] At the sentencing hearing, the Commonwealth explained to the trial court that Horst's cash assets appeared to be the proceeds from his drug distribution enterprise. *See* N.T. (Sentencing), 8/1/18, at 4-5 (wherein the prosecutor explains that Horst had "the ability to manufacture and distribute hundreds of grams of methamphetamine in our community[;]" that during the course of the investigation, Horst had well over $20,000.00 in cash; and that between the time that the Pennsylvania State Police searched Horst's garage and his arrest, Horst amassed another $7,000.00).