J-S45003-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NELSON ALVARADO-LENHART, | |
| Appellant | No. 1733 MDA 2012 |

Appeal from the Judgment of Sentence Entered September 6, 2012
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003854-2011

BEFORE:  BENDER, J., DONOHUE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, J.:                    **FILED NOVEMBER 21, 2014**

Appellant, Nelson Alvarado-Lenhart, appeals from the judgment of sentence of six to fifteen years' incarceration, imposed after a jury convicted him of aggravated assault, robbery, theft by unlawful taking, receiving stolen property, and simple assault.  On appeal, Appellant contends that he was denied his constitutional right to counsel, as he did not knowingly, voluntarily, and intelligently waive his right to an attorney.  After careful review, we are constrained to vacate Appellant's judgment of sentence and remand for a new trial.

While the facts of Appellant's case are irrelevant to our disposition, we note that his convictions stemmed from evidence that he robbed and beat a man outside of a restaurant in August of 2011.  After Appellant was charged with the above-stated offenses, the court appointed Paul Yessler, Esquire, to

_____

[*] Retired Senior Judge assigned to the Superior Court.

represent him. At a pretrial status hearing on December 16, 2011, Attorney Yessler informed the court that Appellant had repeatedly expressed his desire to represent himself. N.T. Hearing, 12/16/12, at 2. Appellant, however, immediately interjected, explaining that he did not wish to represent himself but, instead, he wanted a new attorney because he was unhappy with Attorney Yessler's representation. *Id.* After listening to Appellant's complaints about Attorney Yessler's representation, the court and Appellant had the following exchange:

> [The Court]: If you don't want [Attorney] Yessler to represent you, you have the right to hire an attorney. You say you were making $700 a week. You can hire an attorney of your choice.
>
> [Appellant]: I was doing that job one month and spent that money already taking care of bills.
>
> [The Court]: I need to advise you, you have that right if you don't want [Attorney] Yessler to represent you.
>
> [Appellant]: No, I don't.
>
> [The Court]: He is your free attorney. You have to represent yourself –
>
> [Appellant]: Why can't I have a court appointed attorney?
>
> [The Court]: He is your court appointed attorney. You don't get to pick and choose who you are assigned.
>
> [Appellant]: I'm not picking and choosing. I'm asking for somebody that's going to fight for me that isn't giving me attitude that hasn't fought one bit. He's rolling with the punches. He is not doing anything for me. You know what I mean?
>
> I deserve a fair hearing, a fair trial. You know what I mean? I would represent myself if I knew the bells and whistles of the whole thing. I don't. I am not going – I refuse to go any further with this gentleman.

[The Court]: All right.

[Appellant]: I will represent myself if I have to, but everything is going to be ---

[The Court]: Stop.

[Appellant]: All right.

[The Court]: And now, this 16th day of December, 2011, after colloquy conducted, and upon motion of [] Paul Yessler, Esquire, the appearance of Attorney Yessler and the Public Defender is hereby withdrawn.

There is definitely conflict between the attorney and his client with regard to the manner [in] which he should conduct his services, and [Appellant] doesn't want him to represent him anymore.

We need to address the waiver of counsel. You can hire your own attorney. Do you understand that by representing yourself you will be bound by all the rules of procedure that lawyers are bond [*sic*] by and –

[Appellant]: Can I get some kind of information on what the same rules that apply to a lawyer that apply to me? Can I get information telling me what's going on?

[The Court]: You have [that] at the prison. Don't they have some sort --

[Appellant]: I put in a communication form like that, and they expect me to go to an inmate and have them direct me. And there, there is a lot of information missing from the books at the law library. I asked numerous times. I asked for help and information.

[The Court]: Stop, [Appellant]. You are in a box and I am in a box. You apparently can't hire a private attorney. You have a public attorney and you fired him. You and I are left with each other because that's the way it's going to be.

Now, you obviously want a trial, right? You want a trial?

[Appellant]: I want to be represented adequately.

*Id.* at 6-8.

The Court then discussed why it believed Appellant had received adequate representation, noting that Attorney Yessler called witnesses at the preliminary hearing, filed a writ of *habeas corpus* on Appellant's behalf, and conducted "a fairly good investigation of the case." *Id.* at 9. The court then stated,

> [The Court]: I didn't believe that the issues that were raised by your attorney on your behalf which you have alluded to that, that that was sufficient. The evidence was you committed these offenses. So let's go forward. We will set a trial date and you will represent yourself.

*Id.* at 9. The court then provided Appellant with "a waiver of counsel form," directing Appellant to "read it and sign it," and stating that doing so "means you don't want [Attorney] Yessler." *Id.* Appellant then signed the waiver form. Finally, the court appointed Jay Nigrini, Esquire, to act as stand-by counsel for Appellant, but explained to Appellant that he was still representing himself, and that Attorney Nigrini was "just there to answer questions." *Id.* at 10.

On April 18, 2012, Appellant filed a *pro se* "Petition to Uphold Retainment of Jay M. Nigrini to Represent As Conflict Counsel in Case Doc. 3854/11." In that document, Appellant contended that he was deprived of his right to counsel because the court did not conduct a proper colloquy to ensure his waiver was knowing, intelligent, and voluntary. He asked that the court appoint him representation. On April 24, 2012, the trial court issued an order denying Appellant's petition. The court stated: "Jay Nigrini, Esquire, has been appointed stand-by counsel for [Appellant]. [Appellant]

- 4 -

continues to be eligible for free legal representation by the Public Defender, Paul Yessler, Esquire." Trial Court Order, 4/24/12.

On August 21, 2012, three days before Appellant's jury trial was set to commence, he again filed a *pro se* document entitled "Petition for Counsel Representation." Therein, Appellant alleged that he was indigent and could not afford counsel, and asked that the court appoint him an attorney. The court apparently ignored this filing and Appellant proceeded to trial representing himself. At the close thereof, he was found guilty of the above-stated offenses.

Following his conviction, Appellant hired private counsel who filed a post-sentence motion on his behalf, averring that Appellant's waiver of his right to counsel was not knowing, intelligent, and voluntary where the court did not conduct a proper colloquy as mandated by Pa.R.Crim.P. 121. The court denied that post-sentence motion. Appellant then filed a timely notice of appeal, as well a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, he presented one issue for our review:

> A. Whether the trial court denied [Appellant] his right of counsel by not complying with the requirements of Rule of Criminal Procedure 121 at the hearing held on December 16, 2011?

Appellant's Brief at 7.

On September 16, 2013, this Court issued a memorandum decision vacating Appellant's judgment of sentence and remanding for a new trial. In

doing so, we relied on **Commonwealth v. Spotz**, 18 A.3d 244 (Pa. 2011),

where our Supreme Court stated:

> A criminal defendant has a constitutional right, necessarily implied under the Sixth Amendment of the U.S. Constitution, to self-representation at trial. **Faretta v. California**, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, before a defendant will be permitted to proceed *pro se,* he or she must knowingly, voluntarily, and intelligently waive the right to counsel. **Commonwealth v. Blakeney**, 596 Pa. 510, 946 A.2d 645, 655 (2008). To ensure that a waiver is knowing, voluntary, and intelligent, the trial court must conduct a "probing colloquy," which is a searching and formal inquiry as to whether the defendant is aware both of the right to counsel and of the significance and consequences of waiving that right. **Commonwealth v. Starr**, 541 Pa. 564, 664 A.2d 1326, 1335–36 (1995). More specifically, the court must determine the following:
>
> > (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
> >
> > (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
> >
> > (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
> >
> > (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
> >
> > (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
> >
> > (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur

and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2); **Blakeney**, *supra* at 655; **Starr**, supra at 1335.

*Id.* at 262-63.

We also emphasized our Supreme Court's directive that it is "the trial judge who [is] ultimately responsible for ensuring that the defendant is questioned about the six areas discussed above and for determining whether the defendant was indeed making an informed and independent decision to waive counsel." **Commonwealth v. Davido**, 868 A.2d 431, 437 (Pa. 2005) (citation and quotation marks omitted). Accordingly, it is the trial judge who has "the duty to ensure that a defendant's right to counsel was protected." *Id.* Once a defendant expresses a desire to represent himself, the failure "to conduct a thorough, on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error." **Commonwealth v. Clyburn**, 42 A.3d 296, 300-01 (Pa. Super. 2012); **see also Commonwealth v. Patterson**, 931 A.2d 710 (Pa. Super. 2007).

Based on this legal precedent, we concluded in our September 16, 2013 memorandum decision that the trial court in Appellant's case failed to conduct an adequate colloquy to ensure Appellant's waiver of his right to counsel was valid. Instead, the court incorrectly applied a totality of the circumstances analysis.[1] **See Commonwealth v. Houtz**, 856 A.2d 119,

_____

[1] As evidence of this fact, we noted the trial court's statement that "the record, read in its entirety, demonstrates that [Appellant] was offered counsel but intelligently and understandingly rejected that offer." Trial Court

*(Footnote Continued Next Page)*

- 7 -

130 (Pa. Super. 2004); *see also Commonwealth v. Payson*, 723 A.2d 695, 704 (Pa. Super. 1999). We emphasized that the court was required to colloquy Appellant on *all* six areas set forth in Rule 121, yet based on the portions of the December 16, 2011 hearing quoted *supra*, it was obvious that the court failed to do so. Specifically, we emphasized that the court did not inform Appellant of the nature and elements of charges pending against him, permissible range of punishments, possible defenses, and the danger of permanently waiving his right to assert certain defenses and other rights if

*(Footnote Continued)* ─────────────

Opinion (TCO), 11/15/12, at 5. We also emphasized the following language utilized by the trial court in supporting the above-stated conclusion:

> The [c]ourt held a lengthy discussion on December 16, 2011, with [Appellant] regarding his rights, including the right to continue with his appointed counsel's representation and his right to self[-]representation. Unfortunately, [Appellant] was not cooperative with the [c]ourt during this discussion. However, [Appellant] made it abundantly clear that he refused to continue with his appointed counsel's representation. The [c]ourt informed [Appellant] that should he choose to proceed *pro se*, he would be bound by all of the rules of procedure that lawyers are bound by. During this discussion with the [c]ourt, [Appellant] read and signed a WAIVER OF COUNSEL form, which indicated that [Appellant] had been informed of the offenses against him and had been advised of his right to secure a lawyer at his own expense or have one appointed for him. In addition to its discussion with [Appellant] and securing execution of the WAIVER OF COUNSEL form, the [c]ourt appointed standby counsel to be available to [Appellant] for consultation and advice during the proceedings. Based on a complete review of the discussion which occurred on December 16, 2011, the [c]ourt believes that [Appellant's] waiver of counsel was knowing, voluntary and intelligent.

*Id.* at 5-6 (citations to the record omitted).

- 8 -

not raised at trial. We further determined that the fact that Appellant was "not cooperative," the court's appointment of standby counsel, and Appellant's completion of a written colloquy did not dispel the court's obligation to conduct a full, on-the-record colloquy. *See Commonwealth v. Brazil*, 701 A.2d 216, 219 (Pa. 1997) ("Whether standby counsel is ultimately appointed or not, and irrespective of the quality of representation achieved at trial, when a defendant indicates a desire to waive his right to counsel, a full waiver colloquy must be conducted."); *Commonwealth v. Baker*, 464 A.2d 496, 499 (Pa. Super. 1983) ("A form providing for the simple written waiver of counsel, without an on-the-record inquiry, will not suffice as an alternative means to assuring valid waivers."). We noted that this was especially true regarding the written colloquy, as the court misinformed Appellant that signing the form "means that you don't want [Attorney] Yessler." N.T. Hearing, 12/16/11, at 9. We reasoned that the court's misstatement made it unclear whether Appellant signed the form with the understanding that he was waiving his right to counsel, or whether he did so merely to confirm that he did not want Attorney Yessler to represent him.

In sum, we concluded in our September 16, 2013 memorandum that the court did not comply with the colloquy requirements of Rule 121 at the December 16, 2011 hearing. Moreover, after that hearing, Appellant repeatedly filed *pro se* documents requesting that counsel be appointed which the court either denied or disregarded. Thus, we found it clear that

Appellant's waiver of counsel was not knowing, intelligent, and voluntary. Accordingly, we vacated his judgment of sentence and remanded for a new trial.

On September 30, 2013, the Commonwealth filed an application for reargument, which this Court denied on November 6, 2013. The Commonwealth then filed a petition for allowance of appeal with our Supreme Court. On August 19, 2014, the Supreme Court vacated our September 16, 2013 decision and remanded for us to reconsider our disposition under *Commonwealth v. Lucarelli*, 971 A.2d 1173 (Pa. 2009). We now do so herein.

In *Lucarelli*, the defendant was arrested and charged with various offenses. *Id.* at 1176. Prior to trial, he retained the services of three different attorneys, who all ultimately petitioned to withdraw. *Id.* After one such petition to withdraw was filed by counsel, Lucarelli filed a *pro se* "Petition for Due Process Violation and Attorney Misconduct." *Id.* However, at the hearing on that motion, Lucarelli confusingly insisted he did not want his attorney to withdraw. *Id.* Nevertheless, the court permitted that counsel to withdraw, and advised Lucarelli to retain another attorney. *Id.*

Lucarelli did not do so. Instead, at a later hearing, he again appeared *pro se* and informed the court that he wanted a public defender. *Id.* However, when he was provided an application to obtain court-appointed counsel, he did not complete it and appeared *pro se* at the next court proceeding. *Id.* at 1176-1177. Lucarelli then failed to appear for jury

- 10 -

selection, causing the court to continue trial and issue a bench warrant for his arrest. *Id.* at 1177.

The bench warrant was later lifted, and a fourth attorney was appointed as Lucarelli's standby counsel. *Id.* However, Lucarelli subsequently informed the court "he did not wish to proceed alone before a jury." *Id.* Accordingly, the court reduced his bail from $100,000 to $80,000 so that Lucarelli could obtain counsel. *Id.* Nevertheless, Lucarelli appeared *pro se* for both jury selection and trial, and was unable to provide any reason for his failure to retain counsel. *Id.*

On appeal, our Supreme Court held that Lucarelli had forfeited his right to counsel. In reaching this decision, the Court began by discussing the distinction between waiver and forfeiture:

> Waiver is "an intentional and voluntary relinquishment of a known right." By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct."

*Id.* at 1179 (citations omitted). The Court then concluded that "[Rule] 121 and its colloquy requirements do not apply to situations where forfeiture is found." *Id.* It reasoned that,

> [t]o hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance. Should an unrepresented defendant choose not to engage in the colloquy process with the trial court, were there no provision for forfeiture of counsel, that defendant could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. Such a result

would be untenable. We reject [Lucarelli's] suggestion that the Commonwealth must demonstrate that Appellee "knowingly and intelligently" engaged in conduct that had the inevitable effect of impairing his constitutional right to counsel. **We hold today that where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel.**

*Id.* (emphasis added).

Applying this holding to the facts of *Lucarelli*, the Court concluded that Lucarelli had forfeited his right to counsel for the following reasons:

[Lucarelli's] behavior, over a course of 8½ months, was sufficiently obstructive to mandate a conclusion of forfeiture because he engaged in extremely dilatory conduct. [Lucarelli] had more than eight months to prepare for trial; **had the financial means to retain counsel; did retain counsel on several occasions, although the attorneys were permitted to withdraw when the attorney-client relationship deteriorated; was given access to $20,000 by the trial court some five weeks before the commencement of trial for the purpose of retaining counsel**; **and failed to offer an explanation for not having retained counsel by the start of trial**. **[Lucarelli] simply decided not to retain private counsel because he did not wish to spend the money.** Contrary to the Superior Court's conclusion, we hold that the trial court acted properly in directing [Lucarelli] to proceed to trial *pro se.* Thus, we hold further that the Superior Court committed an error of law in failing to recognize that [Lucarelli's] pattern of behavior constituted extremely dilatory conduct, sufficient to result in the forfeiture of his right to counsel.

*Id.* at 1180 (footnote omitted).

For the reasons stated *infra*, we find *Lucarelli* distinguishable from the facts of the instant case. Notably, unlike the defendant in *Lucarelli*, here,

- 12 -

Appellant was eligible for court-appointed counsel.[2] As the above-emphasized language in *Lucarelli* indicates, our Supreme Court's conclusion that Lucarelli's conduct "was sufficiently obstructive to mandate a conclusion of forfeiture" hinged on the fact that Lucarelli could afford counsel (and, at one point during the proceedings, was given access to $20,000 to acquire counsel), yet continuously failed to retain representation without explanation. *Lucarelli*, 971 A.2d at 1180. The same is not true in the present case; Appellant had court-appointed counsel, and nothing in the record suggests that he could afford – and simply chose not to retain – a private attorney.

Moreover, in *Lucarelli*, the defendant had *three* privately retained attorneys who withdrew before he began appearing for court proceedings

_____

[2] Our Court highlighted this same distinction in *Commonwealth v. Kelly*, 5 A.3d 370, 379 n.7 (Pa. Super. 2010) (noting that *Lucarelli* "deal[t] with forfeiture as a result of [the] defendant's dilatory conduct," but differed from *Kelly* because "Kelly … was eligible for court-appointed counsel"). In *Kelly*, we chose not to rely on *Lucarelli* to determine if Kelly's conduct was sufficiently dilatory to constitute forfeiture of his right to court-appointed counsel, instead looking to federal case law for guidance on that question. *Id.* at 379 (relying on *U.S. v. Fazzini*, 871 F.2d 635, 641-42 (7th Cir. 1989), *cert. denied*, 493 U.S. 982 (1989) (finding defendant waived right to court-appointed counsel where he had been appointed four different attorneys with whom he was displeased), and *U.S. v. Moore*, 706 F.2d 538 (5th Cir. 1983), *cert. denied*, 464 U.S. 859 (1983) (finding defendant forfeited right to counsel after rejecting three court-appointed attorneys, and being informed that his failure to cooperate with the fourth appointed attorney would result in waiver of his right to court-appointed counsel)).

*pro se*. To the contrary, here, Attorney Yessler was Appellant's first, and only, court-appointed attorney. This fact not only distinguishes Appellant's case from **Lucarelli**, but also from other decisions by our Court issued in the wake of **Lucarelli**. **See Kelly**, 5 A.3d at 381 (finding Kelly forfeited his right to counsel where he had been "unwilling to cooperate" with *three* court-appointed attorneys); **Commonwealth v. Thomas**, 879 A.2d 246, 258 (Pa. Super. 2005) (finding defendant "forfeited his right to counsel through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate" with *five* attorneys the court appointed to represent him).

Finally, the conduct of the defendant in **Lucarelli** was clearly more dilatory than Appellant's conduct in the present case. Namely, Lucarelli had three different attorneys with whom he refused to cooperate. He alleged misconduct against one of those attorneys, yet at a hearing on that motion, he confusingly insisted he did not want that counsel to withdraw. Lucarelli also informed the court that he wanted appointed counsel, yet failed to fill out the requisite forms. Moreover, despite being provided ample opportunity, and funding, to retain private counsel, Lucarelli unexplainably failed to do so and continued to appear *pro se*. On one occasion, he failed to appear for court at all, requiring the court to continue the case and issue a warrant for Lucarelli's arrest. Lucarelli's obstructive conduct hampered the disposition of his case for over eight months.

To the contrary, here, Appellant expressed his displeasure with his first court-appointed attorney at a pretrial status hearing. He provided various

reasons why he did not wish to proceed with Attorney Yessler's representation. When the trial court characterized Appellant's conduct as evincing his desire to waive his right to counsel, Appellant did not refuse to participate in the colloquy initiated by the court. *See* N.T. Hearing, 12/16/12, at 7-8. Instead, he simply asked a question about whether he could "get some kind of information" about the rules he must follow when proceeding *pro se*. *Id.* at 8. After Appellant's question, the court never returned to the oral colloquy, instead discussing other matters and then directing Appellant to sign the written colloquy if he did not "want [Attorney] Yessler." *Id.* at 9. Following the December 16, 2012 hearing, Appellant proceeded *pro se* and, other than his filing of two pretrial motions asking the court to appoint counsel, there is no indication that Appellant behaved in any way which delayed the progression of his case or the start of his trial, at which he represented himself. Based on these facts, we conclude that Appellant's behavior was not "extremely dilatory conduct, sufficient to result in the forfeiture of his right to counsel." *Lucarelli*, 971 A.2d at 1180.

Accordingly, we conclude that *Lucarelli* is distinguishable and does not compel a conclusion that Appellant forfeited his right to counsel.[3]

_____

[3] We also note that the facts of Appellant's case are distinguishable from those in *Kelly* and *Thomas*. In *Thomas*, the defendant was appointed *five* different attorneys prior to the start of his trial. He then "refused to be present at the trial to assist his latest counsel, and attempted to take back his trial preparation materials from counsel." *Thomas*, 879 A.2d at 258. On the second day of trial, the defendant threatened to physically harm his attorney, as well as counsel's family. *Id.* at 258-59. Based on the

*(Footnote Continued Next Page)*

Additionally, based on the rationale set forth in our September 16, 2013 memorandum (reiterated, *supra*), we conclude that the trial court did not comply with the colloquy requirements of Rule 121 at the December 16, 2011 hearing. Thus, the record does not establish that Appellant knowingly, intelligently, and voluntarily waived his right to counsel. Because Appellant neither forfeited, nor validly waived, that right, we are constrained to vacate his judgment of sentence and remand for a new trial.

Upon remand, the court shall determine if Appellant wishes to be represented by Attorney Yessler, or proceed *pro se*. If he desires to proceed *pro se*, the court must conduct a full and thorough waiver colloquy pursuant

---

*(Footnote Continued)* _____

defendant's "extremely serious, abusive, and threatening misconduct," we concluded that he forfeited his right to counsel. ***Id.*** at 259.

In ***Kelly***, the defendant was appointed *two* attorneys and was unwilling to work with either of them, resulting in the postponement of his trial. ***Kelly***, 5 A.3d at 381. When the court appointed a third attorney, it warned Kelly that his failure to cooperate with that counsel "would result in [his] representing himself *pro se* at trial." ***Id.*** Nevertheless, Kelly again failed to cooperate with his third attorney and sought to have a fourth counsel appointed. ***Id.*** at 381-82. Kelly treated each of his attorneys with disdain and claimed they were ineffective in representing him. ***Id.*** at 381-82. Based on this behavior, we concluded that Kelly forfeited his right to counsel. ***Id.*** at 382.

Here, Appellant's conduct does not compare with the defendants' behavior in ***Thomas*** and ***Kelly***. Appellant informed the court of his displeasure with his first court-appointed attorney. Nothing in the record indicates he was disdainful, threatening, or abusive toward counsel. Appellant's conduct did not result in postponements or delays of the court proceedings. Therefore, neither ***Thomas*** nor ***Kelly*** compels us to conclude that Appellant forfeited his right to court-appointed counsel.

to Rule 121.  If, on the other hand, Appellant desires to be represented by a court-appointed attorney *other than* Attorney Yessler, he must file a "motion for change of counsel" and state "substantial reasons" for seeking that change.  ***See*** Pa.R.Crim.P. 122(C).

Judgment of sentence vacated.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2014