J-S39032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KENNETH WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 2140 EDA 2014 |

Appeal from the Judgment of Sentence entered on September 10, 2012
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0001587-2010;
CP-51-CR-0003262-2010; CP-51-CR-0003265-2010;
CP-51-CR-0007274-2010

BEFORE: BOWES, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 14, 2015**

Kenneth Williams ("Williams") appeals, *nunc pro tunc*, from the judgment of sentence entered following his conviction of six counts each of robbery and criminal conspiracy, and four counts of possessing an instrument of crime "(PIC").[1] We affirm.

In its Opinion, the trial court summarized the procedural and factual history of this case, which we adopt as though fully restated herein. **See** Trial Court Opinion, 12/29/14, at 1-5.

Williams presents the following claims for our review:

    I.    Is [Williams] entitled to an arrest of judgment with regard to his conviction for six counts of robbery, six counts of criminal conspiracy and four counts of [PIC] since the evidence is insufficient to sustain the verdicts of guilt as

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(i), 903, 907.

the Commonwealth failed to sustain its burden of proving [Williams's] guilt beyond a reasonable doubt?

II. Is [Williams] entitled to a new trial as a result of the pretrial [O]rder that granted the Commonwealth's [M]otion to [C]onsolidate?

III. Is [Williams] entitled to an arrest of judgment since the trial court erred when it denied [Williams's M]otion to dismiss pursuant to Pa.R.Crim.P. 600?

IV. Is [Williams] entitled to a new trial as a result of the trial court's ruling that denied his request to redact a portion of the statements he gave to police?

Brief for Appellant at 5.

Williams first challenges the sufficiency of the evidence underlying his convictions. *Id.* at 15. Williams argues that "the testimony presented at trial did not prove beyond a reasonable doubt that [he] was a co-conspirator or accomplice to the crimes of robbery, criminal conspiracy or [PIC]." *Id.* at 20. Williams contends that he was not identified by any Commonwealth witness as being involved in the crimes. *Id.* Rather, Williams asserts, the case against him violated the *corpus delicti* rule, as it was "almost exclusively based on the statements he provided to police." *Id.*

In its Opinion, after setting forth the appropriate law, the trial court thoroughly addressed Williams's challenge to the sufficiency of the evidence underlying each of his convictions, and concluded that they lack merit. Trial Court Opinion, 12/29/14, at 6-11. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on the basis of its Opinion with regard to Williams's first claim. *See id.*

Williams next claims that the trial court improperly granted the Commonwealth's Motion to Consolidate the charges against him. Brief for Appellant at 38. According to Williams, "[a] review of the facts of each of the incidents shows that there are more differences than similarities that would militate against consolidation." *Id.* at 42. Williams contends that "there is no evidence that each of the robberies is unique[,] or that the evidence of each robbery would have been admissible in the trial of the others to prove common plan or scheme by [Williams]." *Id.* Williams acknowledges that at the hearing on the Commonwealth's Motion, the Commonwealth presented evidence that Williams allegedly drove his co-conspirator to each location to commit the robbery; the crimes occurred within a period of 31 days; the crimes occurred within a three-mile radius of each other; the crimes occurred between 9:00 p.m. and 11:15 p.m.; and each victim was robbed by the co-conspirator at gunpoint. *Id.* at 45. Notwithstanding, Williams asserts that the location, time manner and circumstances of each crime was not unique, and did not exhibit a pattern warranting consolidation. *Id.*

"In reviewing a trial court decision to consolidate offenses for trial, our standard is abuse of discretion." *Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005).

> Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the

jury so that there is no danger of confusion." [Pa.R.Crim.P.] 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. [Pa.R.Crim.P.] 583.

Our Supreme Court has established a three[-]part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine

whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Thomas*, 879 A.2d at 260 (some citations omitted).

In its Opinion, the trial court addressed Williams's challenge to the consolidation of the charges for trial, and concluded that it lacks merit. Trial Court Opinion, 12/29/14, at 11-12. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis. ***See id.***

In his third claim, Williams argues that the trial court erred in denying his Motion to Dismiss pursuant to Pa.R.Crim.P. 600. Brief for Appellant at 47. In particular, Williams disputes the trial court's failure to attribute to the Commonwealth the delay from November 2, 2009, to February 4, 2010. ***Id.*** at 49. Williams asserts that during this time period, he was not transported from Montgomery County to Philadelphia, as "February 4, 2010 was given as the earliest possible day for a protracted room." ***Id.*** Williams contends that it is the Commonwealth's responsibility to assure that he was transported to Philadelphia. ***Id.***

- 4 -

Williams states that during the June 16, 2010 scheduling conference, he was given a trial date of January 13, 2011. *Id.* Williams argues that this delay was not necessarily beyond the Commonwealth's control, "since, as previously stated, it is the Commonwealth's obligation to assure that the accused is tried within the time limitations of Rule 600." *Id.* Therefore, Williams claims, the trial court improperly determined "that the time frame totaling 306 days was excusable delay[,] and that the Commonwealth exercised due diligence in bringing [him] to trial." *Id.*

We review such claims according to the following principles:

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from

good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Thompson*, 93 A.3d 478, 486-87 (Pa. Super. 2014)

(citations omitted).

Rule 600 provides, in relevant part, as follows:

(A)    Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

***

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600.

In its Opinion, the trial court addressed Williams's claim and concluded that it is without merit. Trial Court Opinion, 12/29/14, at 12-14. Specifically, the trial court determined that "the time frame totaling 306 days was excusable delay and the Commonwealth exercised due diligence in bringing [Williams] to trial." *Id.* at 14. We agree with the sound analysis and conclusion of the trial court, as expressed in its Opinion, and affirm on this basis. *See id.* at 12-14.

Finally, Williams claims that the trial court improperly failed to redact a portion of Williams's statements to police. Brief for Appellant at 51. Specifically, Williams argues that the trial court should have redacted the portion of his statement "that referenced other robberies for which he was convicted in another jurisdiction or never charged or convicted." *Id.* According to Williams, "[b]y allowing the Commonwealth to present testimony concerning other robberies that [Williams] may have committed resulted in the trial court's permitting the jury to hear evidence of unrelated criminal activity." *Id.* at 52.

The following standard governs our review of the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (quoting *Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*) (internal citations omitted)).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. Trial Court Opinion, 12/29/14, at 14-15. We agree with the sound reasoning of the trial court, and affirm on the basis of its Opinion with regard to this claim. *See id.*

Additionally, we note the following.

The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." We have described the proper analysis as follows:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014) (citations omitted).

- 8 -

Here, the challenged statements are cumulative of other, previously admitted evidence. **See** Trial Court Opinion, 12/29/14, at 15 (citing N.T., 1/26/12, at 8). As such, our review discloses that any error by the trial court was harmless. **See Hairston**, 84 A.3d at 671-72.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015

CP-51-CR-0001587-2010 Comm. v. Williams, Kenneth
Opinion

IN THE COURT OF COMMON PLI
FIRST JUDICIAL DISTRICT OF PENNSY
CRIMINAL TRIAL DIVISION

7239013931

COMMONWEALTH OF
PENNSYLVANIA

v.

KENNETH WILLIAMS

:     CP-51-CR-0001587-2010
:     CP-51-CR-0003262-2010
      CP-51-CR-0003265-2010
      CP-51-CR-0007274-2010

**FILED**

DEC 29 2014

Criminal Appeals Unit
First Judicial District of PA
OPINION

2140 EDA 2014

BUTCHART, J.                                      December 29, 2014

## I.     PROCEDURAL BACKGROUND

On January 27, 2012, following a jury trial before this Court, Defendant, Kenneth Williams, was convicted of six counts of robbery (18 Pa.C.S. § 3701(a)(1)(i)), six counts of criminal conspiracy (18 Pa.C.S. § 903(a)), and four counts of possessing an instrument of crime, ("PIC") (18 Pa.C.S. §907(a)). The Court deferred sentencing so that a pre-sentence report and mental health evaluation could be prepared. On June 15, 2012, the Court denied Defendant's untimely filed pro-se motion for reconsideration. On that date, the Court imposed concurrent sentences of fifteen to thirty years incarceration on the charge of robbery, fifteen to thirty years on the charge of criminal conspiracy, and no further penalty was ordered on the PIC charge. On June 21, 2012, the Commonwealth filed a Motion to Reconsider/Modify Sentence. On September 10, 2012, the Court imposed concurrent sentences of ten to twenty years on the charges of robbery and criminal conspiracy, and two and a half to five years incarceration on the PIC charge to run consecutive to the charges of robbery and criminal conspiracy.

On October 2, 2012, Defendant filed an appeal with the Superior Court of Pennsylvania. On January 28, 2013, the Superior Court of Pennsylvania dismissed Defendant's appeal for

1

failure to comply with Pa.R.A.P. §3517. On May 7, 2013, Defendant filed a Post-Conviction Relief Act Petition. On July 18, 2014, this Court reinstated Defendant's Appellate Rights Nunc Pro Tunc to the Superior Court of Pennsylvania with no objection from the Commonwealth. This appeal followed.

Defendant has appealed from the judgment of sentence entered by the Court on the grounds that:

1) The defendant is entitled to an arrest of judgment with regard to his conviction for six counts of robbery, six counts of criminal conspiracy and four counts of possessing instruments of crime since the evidence was insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving the defendant's guilt beyond a reasonable doubt.

2) The defendant is entitled to a new trial as a result of the pretrial Order of the Honorable Sandy L.V. Byrd dated April 8, 2011 that granted the Commonwealth's motion to consolidate.

3) The defendant is entitled to an arrest of judgment since the trial court erred when it denied the defendant's motion to dismiss pursuant to Pa.R.Crim.P. 600.

4) The defendant is entitled to a new trial as a result of the trial court's ruling that denied his request to redact a portion of a statement he gave to police. Defendant's 1925(b) Statement ("Concise Statement of Errors Complained of on Appeal") at ¶ 1-4.

For the reasons set forth below, Defendant's claims are without merit and the judgment of sentence should be affirmed.

## II.    FACTUAL BACKGROUND

At trial the Commonwealth presented the testimony of Julia Carp, Joanne Bass, Molly Bass, James McCafferty, Heather Tartack, and Holly Penn. Detectives Michael Begley, Timothy Tague, Michael Acerenza, and Detective Sergeant Anthony P. Disandro also testified. No

2

witnesses testified on behalf of the Defendant. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

On July 28, 2009, at approximately 9:45 p.m. Julia Carp, was walking towards her apartment when co-conspirator, Dennis Maddrey ordered her to turn around. N.T. 1/25/12 pp. 38-41. Ms. Carp complied and Maddrey walked toward her with a gun, commanded her to "get down on the ground," pushed the gun against her back, took a small purse from her hand, and reached into her pockets. N.T. 1/25/12 p. 41. Ms. Carp was terrified. Id. Taken from Ms. Carp were her Coach wristlet valued at approximately $100, her license and apartment identification, $15 in cash, her cell phone, and lip gloss. N.T. 1/25/12 p. 42. Ms. Carp identified Maddrey as the person who robbed her in a photo array and subsequently at a preliminary hearing on March 16, 2010. N.T. 1/25/12 pp. 45-47.

On July 28, 2009, Defendant drove Maddrey to the area of Ridge and Henry Avenues. N.T. 1/25/12 p. 50, 1/26/12 pp. 69-72. Shortly after 10 p.m. Joanne Bass and her daughter Molly Bass were in the street near Molly's car when Maddrey approached them from behind with a gun. N.T. 1/25/12 pp. 50-51, 59. Maddrey initially pointed the gun at Molly and then at Joanne. N.T. 1/25/12 p. 60. Maddrey ordered them to "come here" and then ordered them to "move back here" to where he was standing on the pavement. N.T. 1/25/12 p. 51, 60. Both Joanne Bass and Molly Bass ran from Maddrey and attempted to flag down a car. N.T. 1/25/12 pp. 53-54. They ran to a gas station and used Joanne's cell phone to call family members, who contacted the police. N.T. 1/25/12 pp. 53-54, 61-62. At a hearing on February 4, 2010, Joanne Bass identified Maddrey as the person who accosted her. N.T. 1/25/12 p. 56.

On August 21, 2009, at approximately 11:15 p.m., Heather Tartack and Holly Penn were entering Ms. Penn's apartment building located at 800 Cottman Avenue. N.T. 1/26/12 pp. 25-27.

3

Defendant drove Maddrey to the location and remained in the car. N.T. 1/26/12 pp. 63-66. Wearing black sunglasses, Maddrey approached the victims from behind and ordered them to hand over their purses. N.T. 1/26/12 pp. 28, 37. Maddrey pointed a gun at Ms. Penn's head, pushed Ms. Tartack against the wall and held the gun toward her head. N.T. 1/26/12 p. 28, 37. Ms. Penn gave Maddrey her purse but Ms. Tartack did not. N.T. 1/26/12 pp. 28, 37. Ms. Tartack eventually relinquished her grip and Maddrey ran away with both purses. N.T. 1/26/12 pp. 29, 37-38. Ms. Tartack ran after Maddrey; he turned and fired in her direction, hitting her. N.T. 1/26/12 pp. 29, 37. Ms. Tartack continued to chase Maddrey but lost sight of him. N.T. 1/26/12 p. 31. She saw a car drive away from the building. N.T. 1/26/12 p. 31. Inside Ms. Tartack's purse was a cell phone, a wallet containing $80, Social Security card, work identification, driver's license, credit cards, and medications. N.T. 1/26/14 p. 29. Ms. Penn's purse held her wallet, credit cards, and identification. N.T. 1/26/12 p. 38. Ms. Penn called the police and both she and Ms. Tartack were transported to the hospital and then to the Philadelphia Police Detective's Division. N.T. 1/26/12 pp. 38-39. On September 12, 2009, Ms. Penn used a photo array to identify Maddrey as the person who robbed her. N.T. 1/26/12 p. 40. Ms. Tartack identified Maddrey as her assailant at a preliminary hearing on May 26, 2010. N.T. 1/26/12 p. 32.

On August 27, 2009, at approximately 10:45 p.m. James McCafferty was cleaning out his car near his home at 42 East Abington Avenue. N.T. 1/26/12 p. 14. Mr. McCafferty observed Maddrey walk past him, talking loudly on his cell phone. N.T. 1/26/12 pp. 14-15. Mr. McCafferty and Maddrey looked at one another. N.T. 1/26/14 p. 15. Mr. McCafferty crouched back inside his car and felt what he believed to be a gun pressed on the side of his temple. N.T. 1/26/14 pp. 15-17. Maddrey ordered him to give him his money; Mr. McCafferty handed over

4

his wallet. N.T. 1/26/12 p. 17. Maddrey then commanded Mr. McCafferty to sit down on the curb and began to walk away. N.T. 1/26/12 pp. 17-18. Mr. McCafferty observed Maddrey get into a car. N.T. 1/26/12 p. 18. Inside Mr. McCafferty's wallet was $40 and credit cards. N.T. 1/26/12 pp. 17, 24. On September 24, 2009, Mr. McCafferty used a photo array to identify Maddrey as the person who robbed him. N.T. 1/26/12 pp. 21-22. He later identified Maddrey from a prison lineup at a preliminary hearing on March 16, 2010. N.T. 1/26/12 p. 22.

On August 28, 2009, Defendant met with Detective Sergeant Anthony P. Disandro from the Abington Township Police Department. N.T. 1/26/12 pp. 42-44. See Commonwealth Exhibit 19 . Defendant gave a statement indicating that Maddrey was a friend from the neighborhood and that Defendant drove him around when Maddrey committed some robberies. N.T. 1/26/12 pp. 53-56. Defendant indicated that he drove Maddrey to different locations, received money, and used the credit cards obtained from the robberies to purchase gas. N.T. 1/26/12 pp. 54-55. Defendant was aware that Maddrey used a BB gun to commit his crimes and stated that he always remained inside the car. N.T. 1/26/12 p. 56.

On August 29, 2009, Defendant called Sergeant Disandro four or five times because he wanted to speak to him about "some other robberies." N.T. 1/26/12 p. 58. On August 31, 2009 at 6:25 p.m., Defendant met with Sergeant Disandro and told him about robberies that happened in the "Philadelphia area." N.T. 1/26/12 p. 62. See Commonwealth Exhibit 20. Defendant indicated that the robberies occurred from July-August 2009, after 9 p.m., and indicated that he remained in the car while Maddrey robbed his victims. N.T. 1/26/12 pp. 62-63.

## III.   DISCUSSION

1. Sufficiency

Defendant claims that he "is entitled to an arrest of judgment with regard to his conviction for… robbery…criminal conspiracy and… possessing instrument of crime since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden for proving the defendant's guilt beyond a reasonable doubt… The case against the defendant was essentially based upon the statements he provided to the police.  The Commonwealth, however, failed to prove a *corpus delicti* for any of the crimes charged. Moreover, the defendant's statements did not prove that he was involved in any manner in the crimes that the victims testified to at trial." Statement of Errors at ¶ 1.  This claim is without merit.

In considering a challenge to the sufficiency of the evidence, the Court must decide whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Muniz, 5 A. 3d 345, 348 (Pa. Super. 2010), *appeal denied*, 19 A.3d 1050 (Pa. 2011) (citing Commonwealth v. Hennigan, 753 A.2d 245, 253 (Pa. Super. 2000).  The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.

Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Commonwealth v. Cassidy, 668 A.2d 1143, 1144 (Pa. Super. 1995), *appeal denied*, 681 A.2d 176 (Pa. 1996) (citation omitted).  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of

wholly circumstantial evidence. Id. "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Muniz, 5 A.3d at 348 (Pa. Super. 2010). Finally, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Id.

a. Robbery

"A person is guilty of robbery if, in the course of committing a theft, he [*inter alia*]: ... inflicts serious bodily injury upon another." 18 Pa.C.S. § 3701(a)(1)(i). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S. §3701(a)(2).

The evidence here, as detailed above, showed that Defendant transported his co-conspirator Maddrey to the different locations to commit the crimes while he remained inside of the vehicle. During his statements to Detective Sergeant Disandro, Defendant provided detailed descriptions of the various crimes committed above and even guided the police to Cottman Avenue where the robbery of Ms. Tartack and Ms. Penn occurred. N.T. 1/26/12 pp. 73-74. Defendant told police the spoils he received from the robberies and how he spent them. N.T. 1/26/12 pp. 54-72. The evidence was sufficient to allow a reasonable fact-finder to conclude that Defendant, through Maddrey who shot Ms. Tartack in the head and used a gun to commit the thefts, inflicted serious bodily injury while attempting to commit a theft, and that he was therefore guilty of robbery.

b. Conspiracy

The crime of criminal conspiracy is defined as: " A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such

7

crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. 18 Pa.C.S. § 903(a). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Commonwealth. v. Swerdlow, 636 A.2d 1173, 1177 (Pa. Super. 1994). Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. Id.

In the instant matter, a conspiracy may be inferred from the conduct and circumstances of Defendant and Maddrey. The evidence presented and viewed in its entirety was sufficient to establish a criminal conspiracy between Defendant and Maddrey. Defendant knew Maddrey as a "friend from the neighborhood." N.T. 1/26/12 p. 53. Defendant aided Maddrey by driving Maddrey to different locations to commit robberies. Two victims recalled witnessing either Maddrey entering a car or a car driving away following the incident. N.T. 1/26/12 pp. 18, 31. Defendant used his car during the crimes and admitted to knowing of Maddrey's criminal intent, stating that Maddrey "would come back to the car with stuff." N.T. 1/26/12 pp. 53-54. The criminal partnership was further solidified by Defendant receiving gas money as compensation for his participation. Id. This evidence was sufficient to allow a reasonable fact-finder to conclude that there was a criminal conspiracy between Defendant and Maddrey.

c. PIC

To sustain a conviction for possessing an instrument of crime, the Commonwealth must establish, *inter alia*, that defendant "possesse[d] any instrument of crime with intent to employ it criminally." 18 Pa.C.S. §907(a). An "instrument of crime" is defined as "(1) [a]nything

8

specially made or specially adapted for criminal use...[or] (2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have...." 18 Pa.C.S. §907(d).

The evidence in this case clearly supported a finding that Defendant knew that his co-conspirator Maddrey possessed an instrument of crime. Defendant stated that not only did he know that Maddrey used a BB gun to commit the robberies, but he personally saw the gun, and described the gun as black. N.T. 1/26/12 p. 55. The gun described by Defendant and used in the robberies was seized by the police in an automobile registered to Maddrey. N.T. 1/25/12 pp. 67-71. Furthermore, the evidence established that Maddrey used the gun to effectuate the robberies in which Defendant was involved. Accordingly, the evidence was sufficient for the fact-finder to find Defendant guilty for possessing an instrument of crime.

The well-established *corpus delicti* rule provides that "a criminal conviction may not stand merely on the out[-]of[-]court confession of one accused, and thus a case may not go to the fact[-]finder where independent evidence does not suggest that a crime has occurred." Commonwealth v. Edwards, 555 A.2d 818, 823 (Pa. 1989). This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements. Commonwealth v. Cuevas, 61 A.3d 292, 295 *appeal denied* 77 A.3d 1258 (Pa. Super. 2013) (quoting Commonwealth v. Turza, 16 A.2d 401, 404 (Pa. 1940)). The *corpus delicti* consists of two elements: (1) the occurrence of a loss or injury, and (2) some person's criminal conduct as the source of that loss or injury. Commonwealth v. Ware, 329 A.2d 258, 274 (Pa. 1974). The *corpus delicti* may be proven by circumstantial evidence. Commonwealth v. Cuevas, 61 A.3d 292, 295 appeal denied, 621 Pa. 693, 77 A.3d 1258 (Pa. Super. 2013) (quoting Commonwealth v. Forman, 590 A.2d 1282, 1285 (Pa. Super. 1991)).

9

Based on the testimony of the victims at trial, each suffered a loss or injury. Defendant's direct conduct in driving Maddrey to the various locations in order to commit the robberies can be classified as the source of the injury to the victims. The *corpus delicti* rule is not implicated in these matters as the Court heard testimony from the victims that corroborated the statements given by Defendant placing himself in the criminal acts as Maddrey's driver. Testimony was provided by the victims where Maddrey was seen entering a car or a car was seen driving away following the crimes. N.T. 1/26/12 pp. 18, 31. Additionally, the gun described by Defendant in his statements was seized by the police in an automobile registered to Maddrey. N.T. 1/25/12 pp. 67-71. As a result, the seizure of the gun used by Maddreyalong with the victim testimony identifying Maddrey and recounting the crimes was sufficient evidence of the *corpus delicti* of the Defendant's crimes.

Furthermore, Defendant's statements clearly demonstrated his involvement in the crimes that the victims testified to at trial. Defendant gave information about the robberies of Heather Tartack and Holly Penn describing them as "two white girls probably in their twenties." N.T. 1/26/12 p. 64. Defendant gave the time ("a little after nine at night"), location ("Cottman Avenue and Rising Sun Avenue"), and the spoils received from those robberies ("two handbags, credit cards, and cash"). N.T. 1/26/12 pp. 62-65. Defendant provided information regarding the robbery of Julia Carp describing her as a "female; white." N.T. 1/26/12 p. 70. Defendant stated that the robbery occurred near an apartment complex and that Maddrey used the same gun. N.T. 1/26/12 pp. 69-70. Defendant then described the robberies of Joanne Bass and Molly Bass where he described them as "white" and "like a mom and daughter." N.T. 1/26/12 p. 71. Defendant went on to state that Maddrey used the same gun to effectuate this robbery, that "one of the ladies ran into the street," and that he and Maddrey received nothing from this robbery.

10

N.T. 1/2612 pp. 71-72. As such, the Defendant's statements clearly proved his knowledge and involvement in the crimes with which he was charged. *See* Commonwealth Exhibits 19, 20.

## 2. Consolidation

Defendant claims that that he "is entitled to a new trial as a result of the pretrial Order of the Honorable Sandy L.V. Byrd dated April 8, 2011 that granted the Commonwealth's motion to consolidate. The various incidents were unrelated and not connected in any manner. The crimes were different in nature, the facts were not capable of separation by the jury so there was a danger of jury confusion, the offenses were not based on the same act or transaction and evidence of each of the offenses would not be admissible in a separate trial for the other. As a result, the defendant was prejudiced and denied a fair trial." Statement of Errors at ¶ 2. This claim is without merit.

Offenses charged in separate informations may be tried together, even where they did not rise out of the same act or transaction, if evidence of each offense would be admissible in a separate trial of the other and is capable of separations by the fact-finder so as to avoid confusion. Commonwealth v. Cousar, 928 A.2d 1025, 1037 (Pa. 2007); *see* Pa. R.Crim.P. 582(A). While evidence of other acts is not admissible to prove bad character or criminal propensity, it may be admitted for other purposes where the probative value of the evidence outweighs the potential for prejudice. Pa.R.Evid. 404(b); *see* Commonwealth v. Williams, 896 A.2d 523, 539 (Pa. 2006), *cert. denied*, 549 U.S. 1213 (2007). One such proper purpose for other acts evidence is to prove that the alleged conduct was part of a common plan or scheme. *See, e.g.,* Commonwealth v. Grzegorzewski, 945 A.2d 237, 239-240 (Pa. Super. 2008), *appeal denied*, 954 A.2d 575 (Pa. 2008).

11

Here, the evidence of each robbery would have been admissible in the trial of the others to prove common plan or scheme by Defendant. Defendant transported Maddrey in each criminal incident. N.T. 4/8/11 p. 11. The crimes occurred within 31 days, within a three mile radius of each other between the hours of 9 p.m. and 11:15 p.m. N.T. 4/8/11 pp. 11-12. Each victim was robbed by Maddrey using a gun. N.T. 4/8/11 pp. 7, 8, 9, 12. A jury would have been fully capable of separating the offenses. Accordingly, the Court acted within its discretion in granting the Commonwealth's motion to consolidate, and no relief is due.

3. Rule 600

Defendant next contends that he "is entitled to an arrest of judgment since the trial court erred when it denied the defendant's motion to dismiss pursuant to Pa.R.Crim.P. 600. The defendant was not brought to trial within the time limitations of Rule 600. The Commonwealth failed to prove that there was any excludable or excusable time or that it acted with diligence in bringing the defendant to trial." Statement of Errors ¶ 3. This claim is without merit.

Rule 600 provides that, once a criminal complaint has been filed, trial must commence within 180 days in cases where the defendant is not free on bail, and must commence within 365 days in cases where the defendant is at liberty on bail. Pa. R. Crim. P. 600(B)(1), 600(A)(2). A violation of Rule 600 does not automatically entitle the defendant to a discharge of the case. Commonwealth v. Murray, 879 A.2d 309, 314 (Pa. Super. 2005). "Other than release on nominal bail, no other remedy is prescribed for defendants incarcerated for less than three hundred sixty-five days, even if they were not, in fact, released on nominal bail. The only occasion requiring charges to be dismissed [under Rule 600] occurs if the Commonwealth fails to bring the defendant to trial within three hundred sixty-five days, taking into account all excludable time and excusable delay." Id. at 314.

12

"'Excludable time' is defined in *Rule 600(C)* [and includes, in pertinent part, any] period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. 'Excusable delay' is not expressly defined in *Rule 600*, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." Commonwealth v. Hyland, 875 A.2d 1175, 1190 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005) (quoting Commonwealth v. Hunt, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005)). When evaluating whether the Commonwealth has acted with due diligence, the Court must employ a case-by-case analysis to determine whether the Commonwealth used reasonable efforts in bringing the defendant to trial within the proscribed time limits. Hyland, 875 A.2d at 1190. Complex cases requiring protracted courtrooms and clogged trial court dockets are circumstances beyond the control of the Commonwealth. Commonwealth v. Ramos, 936 A.2d 1097, 1104 (Pa. Super. 2007). If the trial court determines that the Commonwealth exercised due diligence and that the circumstances which occasioned the postponement(s) were beyond the control of the Commonwealth, it shall deny the motion. If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the trial court must assess whether there is excludable time and/or excusable delay. Commonwealth. v. Malgieri, 889 A.2d 604, 606 (Pa. Super. 2005).

For purposes of this claim, the Court notes that CP-51-CR-0007274-2010 was not ripe for Rule 600 consideration. N.T. 1/25/12 pp. 7, 15, 18. Based on the argument presented to the Court the time frames in dispute were 94 days from November 2, 2009 to February 4, 2010 and

13

211 days from June 16, 2010 to January 13, 2011. N.T. 1/25/12 pp. 7-8.[1] Regarding the time frame of November 2, 2009 to February 4, 2010, Defendant was not transported from Montgomery County to Philadelphia and the date of February 4, 2010 was the earliest possible date for a protracted room. N.T. 1/25/12 pp. 8-9. Both of these circumstances were beyond the control of the Commonwealth. The scheduling conference was held on June 16, 2010. On that date the cases were given the next court date of January 13, 2011, which was the date consistent with the Court's calendar. N.T. 1/25/12 pp. 10-11. This delay was beyond the Commonwealth's control. At trial, Defendant conceded that that the 212 day was not the problem. N.T. 1/25/12 p. 14. The Court determined that the time frame totaling 306 days was excusable delay and the Commonwealth exercised due diligence in bringing Defendant to trial. N.T. 1/25/12 p. 18. The Court concluded that the Commonwealth acted with due diligence in bringing the matter to trial and as such found that Defendant was not entitled to discharge under Rule 600. N.T. 1/25/12 p. 19.

### 4. Admission of Evidence

Lastly, Defendant claims that he "is entitled to a new trial as a result of the trial court's ruling that denied his request to redact a portion of a statement he gave to police. The non-specific portion of the defendant's statement could have resulted in the jury concluding that he was involved in additional robberies for which he was not charged. As a result, the defendant was prejudiced and denied a fair trial." Statement of Errors ¶ 4. This claim is without merit.

"The admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be reversed only upon a showing that the trial court abused its discretion."

---

[1] The testimony at trial indicated that the scheduling conference was scheduled on June 15, 2010, however, the Court of Common Pleas of Philadelphia County Secure Docket indicates that the scheduling conference was held on June 16, 2010. The 1-day difference does not affect the Court's determination.

14

Commonwealth v. Boczkowski, 846 A.2d 75, 93 (Pa. 2004). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." Commonwealth v. Carter, 861 A.2d 957 (Pa. Super. 2004) (*en banc* ); *see* Commonwealth v. Gray, 867 A.2d 560, 569-70 (Pa. Super. 2005).

Defendant asserts that the Court's denial of his request for redaction "could have resulted in the jury concluding that he was involved in additional robberies for which he was not charged." This claim is vague and does not specify how or why the Court misapplied the law or exercised unreasonable judgment. The Court correctly admitted the portions of Defendant's statements because they were virtually identical to the statements that were already admitted in terms of substance. N.T. 1/26/12 p. 8. Defendant's claim as to what "could have resulted" and what the jury could have concluded is mere speculation and conjecture which fails to demonstrate any actual prejudice or harm resulting from the Court's ruling.

## IV.  CONCLUSION

For all the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

_____
ANN M. BUTCHART, J.

15